Stephens *v.* Howard's executor.

SARAH B. STEPHENS and ANNIE B. STEPHENS, by their next friend,

*v.*

EXECUTOR OF MARY L. HOWARD, deceased.

1. A father is bound to support his infant child, if of sufficient ability, even though the child may have an ample estate of its own, but if the father is not able to support his child, or not able to support it according to its station and expectations, a court of equity may appropriate its own estate to its support.

2. Where a legacy is given to an infant unconditionally, so that it vests at once, but is payable when it attains twenty-one, or at any other future time, and its father is not able to support it, and the interest arising from the legacy is not sufficient for that purpose, a court of equity may, in advance of the time fixed for payment by the will, order the principal of the legacy applied to the support of the legatee.

3. Such an order should, however, only be made after a reference and upon satisfactory proof of such facts as clearly show that it is necessary.

On final hearing on bill and answer.

*Mr. J. G. Shipman,* for complainants.

*Mr. D. C. Blair,* for defendants.

THE VICE-CHANCELLOR.

The complainants, who are infants, and sue by their next friend, ask that the principal of a legacy given to them by the will of their grandmother, may be applied, from time to time, by order of the court, to their education and maintenance, notwithstanding that, by the terms of the will, it is not payable until they attain twenty-one years of age. One is now seventeen years of age, and the other thirteen. Their grandmother gave them, together, the one-fourth part of her residuary estate, with direction to her executor to invest the same safely, and pay the interest thereof to them until they reached full age, and then pay the principal to them. Their

share of her estate is $4,700. They have no other property, and, so far as appears, no other expectations. Their mother is dead. Their father is living, but, in consequence of business misfortunes recently suffered, it is represented that he has become so greatly impoverished as to be unable to support his second wife and her infant child. Both daughters were at school when their father met with his reverse of fortune; they have been continued there since by the kindness of an uncle. They desire to be educated for teachers, so that they may support themselves. That is the principal ground upon which they ask the aid of the court.

Two things are clear: First, that the legacies are vested, the title to them being fixed absolutely in the legatees; and, second, that by the express terms of the will the legatees have no right to an immediate payment of the principal sum, or any part of it. Their title to the subject of the gift is as perfect now as though the right to it had been cast upon them by the statute of distribution, but they have no right to present payment; on the contrary, the testatrix has very plainly said that they shall not be paid now, but at a future time. The question is one of power. Has the court power to direct the payment of these legacies in advance of the time fixed by the will? As a general rule, courts are just as much bound by the terms of a will as are the beneficiaries under it—it is a law unto them as well as unto the legatees.

Notwithstanding many expressions of doubt—prominent among which is that of Lord Rosslyn, who, when a like application was first presented to him, said, "I fear, if I should make this decree, it would be my will and not the testator's," but afterwards made the decree—the power of the court to give aid of the character asked seems now to be well established.

Chancellor Kent, after examining the question with his usual care and thoroughness, exercised it in a case where, I think, there was much more reason to doubt the rightfulness and propriety of its exercise than there can be in this

case. There a testator directed his estate to be appraised, and then that his executors should put at interest, on good security, one-eighteenth part of it, and pay the interest thereof to one of his daughters, in half-yearly payments, during her life, and the principal on her death *to her heirs.* She had six infant children, the youngest being under seven. She had been divorced from her husband. The fund invested for her amounted to less than $4,000. Neither she nor her children had any other estate. She had already incurred a considerable debt in the necessary maintenance of herself and her children, which she had no means of paying. The chancellor held, upon these facts, that it was clearly within the power of the court to break in upon the capital of the estate of the infants and make an allowance out of it, not only for their future maintenance and education, but also to discharge the debt already incurred. *Matter of Bostwick, 4 Johns. Ch. 100.* He cited as precedents for his action, *Barlow* v. *Grant, 1 Vern. 255,* and *Harvey* v. *Harvey, 2 P. Wms. 21.* In the last case the master of the rolls said, that where a legacy is given to an infant, payable at twenty-one, but is vested, and there is no limitation over, and the legatee has nothing else to subsist on, it would be extremely hard that he should starve for the sake of his representatives, who, in case of his death, would be entitled to his legacy, and that in such a case the court will order part of the legacy paid presently to provide bread for the legatee.

A jurisdiction in many respects similar will be found to have been exercised in *Greenwell* v. *Greenwell, 5 Ves. 195 ; Chambers* v. *Goldwin, 11 Ves. 1,* and *Ex parte Chambers, 1 Russ. & Myl. 577.* All the cases upon the subject will be found collected in *2 Perry on Trusts § 618.*

It seems never to have been doubted that where a legacy is given to an infant unconditionally, so that it vests at once, but is payable when he attains twenty-one, or at any other future time, and there is a direction to invest, so that the interest for the interim may be accumulated and paid over

with the principal, it is competent for a court of equity, notwithstanding the direction for accumulation, to order the interest to be applied to his support, if he is without other means. *Stretch* v. *Watkins, 1 Madd. 145; Evans* v. *Massey, 1 You. & Jer. 196; 2 Lead. Cas. in Eq. (4th Am. ed.) 716 marg.; 2 Perry on Trusts § 615.* This doctrine was recognized by this court in *Tompkins* v. *Tompkins Ex'r, 3 C. E. Gr. 303.*

These adjudications seem to me to settle the principle of jurisdiction, for a power which enables a court to break in upon income directed to be accumulated, is quite sufficient to enable it to deal with the whole fund, and make such disposition of it as may seem to it to be wisest and best. The source of the power it is easy to trace. It is found in the fact that the infant is the absolute owner of the property, no other person having either a present or prospective legal interest in it, and that, if the present enjoyment of the property is withheld, the infant must suffer, possibly for the advantage of some person who has no interest in the infant, and was never thought of by the testator as a possible recipient of his bounty.

The authority of the court must be considered established. It is, however, a power of great delicacy, and should be exercised very sparingly and with the utmost caution. It may easily be made the instrument of great wrong to those for whose benefit it was created. A father is bound to support his infant child, if of sufficient ability, even though it may have an ample estate of its own, but if he is not, or not able to support it according to its station and expectations, then the court may order the application of its own estate to that end. But such orders, I think, as a general rule, should only be made after a reference, and upon satisfactory proof. In this case the legatees desire to be educated for teachers; the elder to be fitted to teach music, and the other to become a school teacher. But have they any natural aptitude for these vocations? There are persons with so little capacity to acquire musical knowledge, that

the whole fortune of these children might be spent upon one of them without qualifying her to teach even the rudiments successfully. The bill gives no information upon this point, nor does it show how far these girls have been educated in the particular branches that it will now be necessary for them to pursue, nor what will be the several items of expenditure which it will be necessary to incur annually to fit them for the professions they desire to follow.

Under the circumstances, a reference upon these points, as well as to inquire what is the present pecuniary condition of the father, and what are his future business prospects, must precede the determination of the question whether the order asked in this case shall be made or not.