Stewart *v.* Stewart.

CORNELIA GERTRUDE STEWART and HARRY MEYERS, executors and trustees,

*v.*

THOMAS HARRINGTON STEWART et al.

[Filed December 6th, 1900.]

1. Upon a bill by executors and trustees for instructions, the action of the court should be confined to instructions as to present duty, or to duty likely to arise under present conditions.

2. A direction in a will that testator's estate shall remain *intact* for two years after his decease, and a devotion of the income during that period to a specified purpose, followed by provisions for the creation of certain funds, the revenue or income of which is bequeathed, such revenue or income will begin from the expiration of the two years, and not from testator's death.

3. Words occurring more than once in a will must be presumed to be used in all cases in the same sense unless a contrary intention appears in the context or they are applied to a different subject. When words "I desire" are used in parts of a will as directing the disposition of parts of testator's estate, the same sense will be attributed to them in another clause of the will relating to the disposition of a part of the estate, where the context does not indicate any different intention.

4. A devise of lands to a wife for life or during widowhood, and a devise thereof in remainder in fee to a son, followed by an express direction that the devisees shall sell the land and buy other land at a price not exceeding $8,000, and that any excess in price should be invested and added to testator's estate, burdens the lands and the devisees thereof with a trust to be performed according to the direction.

5. A provision that in case certain bequests cannot be *realized* from testator's *estate*, they shall abate equally, followed by authority to sell lands in order to carry out the provisions of the will, permits executors and trustees vested with such authority, to resort to the proceeds of lands so sold, to make up such bequests, when the personal estate is insufficient for that purpose.

---

Stewart *v.* Stewart.

---

*Mr. Peter Backes,* for the complainants.

*Messrs. MacSherry & Rees* and *Mr. Thomas J. Noonan, Jr.,* for the defendants.

MAGIE, CHANCELLOR.

The bill in this cause was filed by Cornelia Gertrude Stewart, executrix and trustee under the will of Thomas Congdon Stewart, and Harry Meyers as executor and trustee of the estate of Thomas Congdon Stewart.

Its prayer is for a construction of the will of Thomas Congdon Stewart and for instructions in respect to the complainants' duty thereunder.

The defendants are Thomas Harrington Stewart, a son of testator, and Rebecca H. Stewart, his wife; Mary Stewart, their daughter, and William W. Scott, Matilda T. Scott, William Hayes, Thomas F. Noonan, Jr., Thomas Fallon, Thomas Harrington and William H. Rees.

An answer has been filed by Thomas Harrington Stewart and Rebecca H., his wife, and Thomas Harrington; and another by William W. Scott, and a formal answer has been filed by the guardian of Mary Stewart, who is an infant.

A decree *pro confesso* has been taken against Matilda T. Scott, William Hayes, Thomas F. Noonan, Jr., Thomas Fallon and William H. Rees.

The cause has been brought to hearing upon the pleadings and a statement of facts agreed on by the solicitors of the complainants and of the answering defendants, other than the guardian of the infant defendant.

It appears thereby that Thomas Congdon Stewart died May 15th, 1897, having made and published his last will which was duly probated in the orphans court by Cornelia Gertrude Stewart and Charles Fanning Stewart, who were the executors and trustees named therein; that Charles died May 10th, 1899, and by his will gave all his estate to Cornelia; that Cornelia, as surviving executor and trustee of Thomas Congdon Stewart, stated and settled an account in the orphans court, exhibiting the condition of the estate at the expiration of two years after

testator's death, and showing a balance of personal estate of over $40,000; that Cornelia thereafter, under the power conferred upon her by the will, nominated Harry Meyers as a successor to the deceased Charles; that the testator died seized of a house and lot, which the will calls his homestead, and of two other tracts of land, which three tracts comprised all the real estate of which he died seized; and that the personal estate exhibited by the account of the executrix comprised all the personal estate of the deceased.

Upon a bill of this sort, the court is not merely to counsel and advise, but it must decide and direct. Its action is to be confined to direction respecting present duty, and limited to interests immediately involved, and which must be properly and fully represented. *Bonnell* v. *Bonnell, 2 Dick. Ch. Rep. 540; Griggs* v. *Veghte, 2 Dick. Ch. Rep. 179; House* v. *Ewen, 10 Stew. Eq. 368.*

A construction is first sought of the first paragraph of the will, which reads thus:

"*First.* After payment of my just debts and expenses of funeral, in the discretion of my executors, I will and direct that my estate shall remain intact for two years after my decease, except as above provided and also for the support and maintenance of my wife and household as at present constituted, which I permit to be done from any income from my estate."

As to the intent of testator expressed in this paragraph, I find no difficulty. He evidently intended thereby, first, that his executors, at their discretion, should pay his debts and funeral expenses; second, that except so far as the same was required for such payment, his executors were not to proceed to devote any part of his estate to the purposes afterwards declared in his will for a period of two years after his death, but, third, during that period they might devote the income thereof to the support and maintenance of his wife and household as they were constituted at his death.

A construction is next sought of a part of paragraph 2 of the will, and instructions as to the effect thereon of the provisions of paragraph 3. The part of paragraph 2 in question and paragraph 3, read as follows:

"I also give to my said wife the house and grounds attached where I now reside, for life, or during her widowhood, provided, always, it be used as a homestead for her and my son Charles. Upon the death or re-marriage of my said wife, I give the said homestead to my son, Charles Fanning Stewart, in fee.

"*Third.* I desire that at such time as may be agreeable and mutually consent to by my wife and my son, Charles, the homestead be sold and one purchased in lieu thereof by them, at a cost not exceeding eight thousand dollars ($8,000), and any excess in price gained be invested and added to my estate, the use of the said household as before stipulated."

The part of paragraph 2 above given, standing alone, presents no difficulty. The testator's devise to his wife was an estate, for life or during widowhood, in the house and lot therein specified to be used as a "homestead" for herself and his son Charles. The latter having died, his interest during the pendency of the wife's estate, whatever it was, has ceased, but his death can have no effect to defeat or diminish the estate expressly devised to her, which by both answers of the adult defendants is admitted to be a life estate.

Nor does it admit of doubt that, by the devise to Charles, an estate in fee was vested in him, which was transmissible by him by deed or will. *2 Washb. Real Prop. 228; Price* v. *Sisson, 2 Beas. 176; Weehawken Ferry Co.* v. *Sisson, 2 C. E. Gr. 475.*

Grave difficulty, however, arises when the intention of the testator, in paragraph 3, is sought.

The testator commences this paragraph "I desire." On the part of the complainants it is contended that this expression "desire" is hortatory, or precatory, and not obligatory. That it is used in this sense is claimed to be indicated by the subsequent provision that the act desired is not to be done at once, but only at such time as shall be agreeable and mutually consented to by the persons to which the devises in paragraph 2 had been made. On the part of the defendants, it is contended that even if the word "desire" be merely precatory it is so used as to create a trust of the homestead by implication.

It is unnecessary to discuss these diverse contentions, for I judge it clear that the word "desire" was used in paragraph 3

in the same sense in which it was used in two other paragraphs of this will. Thus in paragraph 4, which is hereafter set out in full, testator says, "I desire the sum of $25,000 \* \* \* set apart and invested \* \* \* the revenue from which I give to my said wife for life," &c. So in paragraph 7, also hereafter set out in full, he says, "all the rest and remainder \* \* \* I desire invested \* \* \* the income from which shall be shared equally by my two sons and paid to them," &c.

It does not admit of doubt, that in each of these examples the word "desire" did not bear a sense merely hortatory or precatory, but was equivalent to a positive direction.

The rule that words occurring more than once in a will shall be presumed to be used always in the same sense unless a contrary intention appear by the context, or unless the words be applied to a different subject, laid down by Mr. Jarman (*3 Jarm. Wills (R. & T. ed.)* 707), is founded on reason, and is in accord with the fundamental rule which requires us to seek from the language of a will the intent of the testator. There is nothing in the context to indicate that "desire" was used in paragraph 3 in a different sense from that clearly indicated by its use in paragraph 4 and paragraph 7. In every case the word is applied to the same subject-matter, that is, the disposition of parts of testator's estate. It follows, in my judgment, that "desire" in paragraph 3 bears the sense of "I direct," as it evidently does in paragraphs 4 and 7. *Anderson* v. *Anderson, 4 Stew. Eq. 560.*

This result leads to these inquiries: What did testator direct to be done, by whom did he direct it to be done, and when did he intend it should be done.

The acts directed were, first, the sale of the homestead, notwithstanding the devise thereof by the preceding paragraph; second, the purchase of another homestead; third, the use of not over $8,000 of the proceeds of the sale of the former in the purchase of the latter, and fourth, the investing and adding to his estate so much of such proceeds as exceeded the cost of the new homestead.

The singular phrase, "the use of said household as above stipulated," is, in my judgment, expressive, as to the purchased

homestead, of the same intent which was expressed as to the homestead of which testator died seized by the phrase in paragraph 2, "provided, always, it be used as a homestead for her and my son Charles." Properly construed, neither direction could operate to diminish the estate thereby given to the wife, upon the death of Charles, for she would satisfy this proviso by furnishing to Charles a home therein during his life.

It is plain that the acts directed to be done were to be done by the wife and the son Charles. The purchase is expressly directed to be by them; the direction to sell is so connected therewith as to require the sale to be made by them. If there was no express provision to that effect, I think one would be inferred from the fact that the purchase directed to be made by them is to be made out of the proceeds of the sale.

The direction to sell is not, however, peremptory and does not require any immediate sale. On the contrary, it is expressly directed that the sale should take place at a time agreeable and consented to both by his wife and by Charles. The death of Charles, doubtless, renders his consent unnecessary, but it cannot be doubted that the wife must still consent to a sale.

Upon this construction, it is not easy to determine what estate passed under paragraph 2 as limited by paragraph 3. Upon the best consideration I can give, the estate created by paragraph 2, viz., the estate during life or widowhood in the wife, and the remainder in Charles, were burdened with a trust which required a sale when they consented to it, and the purchase of another homestead in which the wife should have a like estate and Charles a like remainder. The proceeds of the sale were to be devoted to such purchase up to the amount of $8,000, and the excess was to fall into testator's estate. If no sale has been consented to, upon the death of the two devisees a sale must then take place, and from the price $8,000 would go to Charles or his grantee or devisee, and the balance would go to testator's estate. Upon this construction the beneficial interest in Charles would be a vested interest in fee, which he could grant or devise.

Stewart *v.* Stewart.

Complainants ask no instructions in respect to their duty under paragraph 4. But the answer, in which Thomas Harrington Stewart joins, sets up, by way of cross-bill, a construction of that paragraph to the effect that the fund of $25,000 thereby directed to be set apart and invested, shall be reduced one-half, and the other half shall be paid to him. This claim may be properly considered. *Green* v. *Blackwell, 5 Stew. Eq.* 773.

Paragraph 4 reads as follows:

"*Fourth.* I desire the sum of twenty-five thousand dollars ($25,000) set apart and invested by my executors, the revenue from which I give to my said wife for life for her support and the maintenance of the household. This provision is made with intent that my said wife and my son Charles shall enjoy a common household."

While the intent of the testator evidently was that his wife and son Charles should "enjoy" a common household," the gift of the "revenue" to his wife for life was for her support and the maintenance of the household. If such gift was burdened in favor of Charles during his lifetime, the burden ceased upon his death, and the wife is still entitled to the whole of the revenue expressly given to her. There is absolutely no trace of an intent to diminish her revenue after Charles' death nor to devote any part of this fund before her death. As there is no gift over this fund will, no doubt, after the wife's death, become part of the estate and be disposed of under the provisions of other clauses of the will.

Paragraph 5 of the will reads as follows:

"*Fifth.* I direct that my executors also set apart and invest in good securities or real estate, the sum of ten thousand dollars ($10,000) and pay the income therefrom, as it accrues, to my son, Thomas Harrington Stewart, during his life, and at his death the same shall go to his children, born in lawful wedlock, *per stirpes*, after the youngest shall have attained the age of twenty-one years."

Complainants' bill asserts that Thomas claims that under this paragraph he is entitled to the income of the fund thereby created from the death of the testator, and they seek instruc-

tions whether such income is payable from testator's death, or from the end of two years thereafter. The answer of Thomas admits that such is his claim. In my judgment, there is no foundation for such claim. The legacy in question is not a general one, upon which, by the general rule, interest is to be reckoned from the expiration of one year from the testator's death, nor is it within any of the exceptions to the general rule in which interest is allowed upon the legacy from testator's death. *Welsh* v. *Brown, 14 Vr. 37; Halsted* v. *Meeker, 3 C. E. Gr. 136; Hennion* v. *Jacobus, 12 C. E. Gr. 28; Griggs* v. *Veghte, 2 Dick. Ch. Rep. 179; Corle* v. *Monkhouse, 2 Dick. Ch. Rep. 73; Green* v. *Green, 3 Stew. Eq. 451; S. C., 5 Stew. Eq. 768; Davison* v. *Rake, 17 Stew. Eq. 506; S. C., 18 Stew. Eq. 767.*

The paragraph in question must be read in connection with· the paragraph which expressly requires the estate to be kept intact for two years, and in the meantime devotes its income to· another purpose. Thus read, the intent of paragraph 5 is clear that the fund is to be set apart and the income thereon commences, not from the testator's death, nor from the period of· one year after his death, but from the expiration of two years from his death.

For like reasons, the "revenue" to be paid the wife under paragraph 4 will be such as accrues after the expiration of two· years from testator's death.

Paragraph 6, omitting the last clause, reads as follows:

"*Sixth.* I give and bequeath to my son, Charles Fanning Stewart, the sum of ten thousand dollars ($10,000), to be paid to him within five years after my death."

Complainants ask no instruction as to their duty under this paragraph, but Thomas Harrington Stewart, by his cross-bill insists that the legacy thereby given to Charles did not vest in him, but upon the death of Charles belonged to Thomas. There is absolutely no foundation for this claim. The legacy· is given by present words, although the time of its payment was in the future. As Charles survived the testator, he became· immediately invested with the right thereto, which was not.

defeated by his death before the time of payment had arrived. The time of payment fixed by this paragraph is any time within five years after testator's death.   This direction is, however, to be read  in connection with the paragraph which preserved the estate intact for two years.   When that period had passed, this legacy could be paid at any time prior to the expiration of five years, and upon Charles' death it went to his personal representative.   *Cook* v. *McDowell, 7 Dick. Ch. Rep. 351; Van Blarcom* v. *Dager, 4 Stew. Eq. 783.*

Complainants, by their bill, assert that the personal estate of testator is insufficient to create the trust fund provided for by paragraph 4, the trust fund provided for by paragraph 5, and the legacy given to Charles by paragraph 6.   The insufficiency of the estate in these respects 'is admitted.   Complainants thereupon seek instruction with respect to the real estate of which testator died seized, other than the homestead. This claim requires the construction of the following parts of the will, viz., the last clause of paragraph 6, and paragraph 7, and parts of paragraph 8.   The last clause of paragraph 6 reads as follows:

"Now if it shall be found that these last two bequests cannot be justly realized from my estate, the deficiency shall be drawn equally from the two bequests, without prejudice."

Paragraph 7 reads as follows:

"*Seventh.* All the rest and remainder of my estate, of every nature and kind, I desire invested and added to my residuary estate, the income from which shall be shared equally by my two sons and paid to them after deducting the taxes paid on the same.   Now if, during ten years after my death, my executors shall become satisfied that either or both of my sons have good and regular business habits and are thrifty and frugal, then, in their discretion, these trusts and limitations shall termi- nate, and my residuary estate aside from these, shall be divided equally, share and share between my said two sons, the habits and defections of either shall not operate as a clog against the other in such division and settlement."

The parts of paragraph 8 which are to be construed, read as follows:

"I also direct, in case of failure to qualify or in case of death of either. the survivor shall associate, by nomination, a successor and such successor shall give such security as shall be proper for the discharge of such duties. I also give and grant to my said executors and trustees and their successors, power to sell and convey any real estate that I may die seized of in order to carry out any of the provisions of this my will."

It is admitted that after the death of Charles, the surviving executrix and trustee nominated and associated with herself Harry Meyers, one of the complainants, as co-executor and co-trustee.

The questions presented involve the meaning of the word "estate" as used in the last clause of paragraph 6, and the same word as used in paragraph 7.

It will be noted that the word in paragraph 6 is not followed by any explanatory word, while in paragraph 7 it is followed by the words "of every nature and kind." Its use in paragraph 6, however, plainly indicates that the source from which the fund provided for in paragraph 5, and the legacy given by paragraph 6, was the same, and that source was the testator's "estate." This word is very comprehensive, and if used without qualifica-. tion includes all testator's property. *Whittaker* v. *Whittaker, 13 Stew. Eq. 33; Cook* v. *Lanning, 13 Stew. Eq. 369; Hartson* v. *Elden, 5 Dick Ch. Rep. 522.* When legacies are to be paid out of the "estate" of a testator, and there is nothing to restrict, the personal and real estate will be charged with the legacies. *Hartson* v. *Elden, supra; Carter* v. *Gray, 13 Dick. Ch. Rep. 411.* Reading again the paragraph under review, I think it admits of no doubt that if the personal estate is insufficient to enable the executors to provide the fund under paragraph 5 and the legacy under paragraph 6, resort may be had to the undevised real estate, unless the meaning of the word "estate" in para-graph 6 is to be restricted by an inference from the use of the same word in paragraph 7, in connection with additional words indicating the broad meaning otherwise attributable to it. As before stated, the rule is that a word used more than once in a will shall be given the same meaning in each case unless a different meaning is indicated by the context. In my judgment, the context does not indicate a different meaning, but the same

meaning more extensively expressed. It results that the exec-utors and trustees may resort to the proceeds of the undevised real estate of deceased to make up the sums provided for by paragraphs 5 and 6, when such real estate shall be sold under the powers conferred by paragraph 8.

Other and perplexing questions are presented by the request of complainants for instruction as to their duty under para-graphs 7 and 8. It is charged and admitted that Thomas Harrington Stewart has given mortgages on the real estate of which testator died seized, and drawn orders upon and made assignments of his interests under the will. The mortgagees and the holders of orders and assignments have been made parties, and some have answered, setting up such claims. Others have permitted a decree *pro confesso* to be entered against them. Upon such claims, complainants ask to be instructed whether such defendants have any lien upon the real estate of which testator died seized or upon his estate generally, or only upon the income of the $10,000 fund and upon the in-vested remainder of the estate.

So far as the $10,000 fund is concerned, it is obvious that Thomas can make no claim to nor confer on others a right to make claim to anything more than the income arising there-from as it accrues and becomes payable during his life.

As to the provisions of paragraph 7, I am of opinion that they must be thus construed. There is a plain direction that all testator's estate not devised and not exhausted in carrying out the previous provisions shall be invested. It is to be added to the residuary estate. These acts are by implication directed to be done by the executors and trustees. The income arising therefrom, *i. e.*, from the vested remainder and the residuary estate when it falls in, is expressly given to testator's two sons in equal shares, and by implication the income is to be paid to them by the trustees. So far there is no difficulty.

But more difficulty occurs with respect to the amount and kind of interest which by the terms of this paragraph pass to the two sons.

The gift to each of them is of the interest of a fund without any limitation as to its continuance and although it is payable

through trustees, such a gift passes the fund itself. *Gulick* v. *Gulick, 12 C. E. Gr. 498; Hartson* v. *Elden, ubi supra.* It becomes vested in the recipient of the income and payable to his personal representative at his death, unless it is otherwise directed by the will. *Lippincott* v. *Pancoast, 2 Dick. Ch. Rep. 21.*

Applying these settled doctrines, the interest of Thomas Harrington Stewart, under paragraph 5 and paragraph 7, is as follows: He is entitled to the income of the fund of $10,000 invested under paragraph 5, from two years after the death of testator, for the period of his life; he is entitled to one-half of the income accruing under paragraph 7, and is vested with the right to one-half of the fund out of which that income comes, which, at least, upon his death, will pass to his personal representative; he has no interest in the real estate of which the testator died seized, which can be conveyed or mortgaged; and his interest in the principal of the fund created under paragraph 7 cannot be anticipated by assignment.

It is, however, apparent that the testator intended that the interest of his sons, in the principal of the fund created under paragraph 7, might, under the contingency strangely set forth in that paragraph, become theirs in possession in their lifetime. Whether, at the expiration of the probationary period of ten years, during which the fund was plainly intended to be held by the executors in trust, unless paid over under its terms, the principal was to be paid to the sons or not, is open to question. But the questions thus suggested are not before us, and it is obvious that the executors and trustees need no present direction therein. It is sufficient to say that Thomas Harrington Stewart's interest is at present confined to the income. This he may doubtless assign and charge. Complainants ask that it be determined whether they should pay the income to those defendants who make claim thereto, or to some, and to which of them.

Bills for the construction of wills and trusts are said to be in the nature of bills of interpleader. Under proper pleading it may be possible to adjudicate as to conflicting claims upon the trust fund, but I do not find in the pleadings or in the

admitted facts, sufficient to justify any adjudication in respect to the claims in question.

Complainants are entitled to a decree for instructions upon the lines of this opinion.