This is a bill for the construction of the will of the late Charles Grant Titsworth. The facts have been stipulated as follows:
Charles Grant Titsworth died a resident of the city of Newark, Essex county, New Jersey, March 29th, 1927, having first duly executed and published a last will and testament bearing date March 15th, 1927.
Said will was duly probated by the surrogate of Essex county, April 11th, 1927, and letters testamentary thereon were issued to complainants Frederick S. Titsworth, Frances T. Dusenberry and Mary T. Taylor, the executors named therein. Said executors thereupon undertook the administration of the estate. All of the said executors are alive and are acting as executors and trustees under the will.
Charles Grant Titsworth, the decedent, left him surviving his daughter, Charlotte Grant Titsworth, born September 7th, 1902, and his son, Grant Titsworth, born February 19th, 1908, both of whom are unmarried and are residing in the city of East Orange, county of Essex and State of New Jersey. Grant Titsworth is at the present time attending Harvard Law School, in the city of Cambridge, State of Massachusetts, as a student for a degree therein. Charlotte Grant Titsworth has not requested the purchase of a residence for herself, nor has she been nor is she now engaged in any business or profession. Both of said children have duly executed their respective wills and testaments.
The executors have paid the debts, funeral expenses and administration expenses of the decedent. They have also complied with the provisions of the second clause of the will and have paid the legacies mentioned in the third, fourth, fifth, sixth, seventh, eighth, ninth and tenth clauses of the will. The executors have not prepared or filed any account of their administration of the said estate, either as executors *Page 438 
or as trustees, in any court. They now hold the residuary estate, largely invested in securities, and have been continuously collecting the income from the corpus of such residuary estate. The executors as trustees have been paying to Charlotte Grant Titsworth and to Grant Titsworth allowances sufficient to cover their respective expenses for support and maintenance, and other personal expenses, and in the case of Grant Titsworth, sufficient also to defray the cost of his attendance at Harvard Law School. Such allowances and disbursements do not, however, exhaust the income received by them as trustees and there is a substantial surplus of income over and above such allowances and disbursements. Neither of the beneficiaries, Charlotte or Grant, have at any time requested the payment to themselves of the entire income received by the trustees but have acquiesced in the amounts paid by the trustees. The executors as such and as trustees have made and filed income tax returns as required by the federal statutes and regulations applicable thereto for the years 1927 (exclusive of that portion thereof prior to March, 1928), 1928 and 1929.
The executors, in setting up and keeping their accounts of their administration as trustees and in making their said income tax returns, have considered that the terms of the will required the holding by them as trustees of two separate, individual trusts, each of one-half of the residuary estate. They accordingly segregated the securities, inventorying certain securities, equal in value to one-half of the residuary estate, as comprising the corpus of the trust for Charlotte Grant Titsworth, and inventorying the balance of the securities as comprising the corpus of the trust for Grant Titsworth. The executors as trustees have also accordingly kept four separate bank accounts, one each for the corpus and for the income of each separate trust and have recorded separately the receipts and disbursements as to corpus and as to income of each trust. Exception to this method of segregation and accounting has been taken by the bureau of internal revenue of the treasury department of the federal government in reviewing the income tax returns *Page 439 
of the executors as fiduciaries, which has asserted that the will contemplates the existence of only one trust fund for the benefit of both of the beneficiaries, Charlotte Grant Titsworth and Grant Titsworth. Federal income taxes upon the income received by the trustees, if treated as one trust, would be much higher than if treated as two, due to elimination of one exemption and higher surtax brackets. The income from each of the segregated shares as above stated has been more than sufficient to provide the payments made by the trustees to date, and the trustees have accumulated income on hand in each of the separate trusts.
The executors and trustees have, since taking possession of the assets of the estate, received stock dividends and rights to subscribe to new issues of stock. In each case such dividends have been of stock of the same description as that held by the trustees and with respect to which the dividend was made. Likewise the "rights" issued were to subscribe to stock of the same description as that held by the trustees, with respect to which the rights were issued. In the case of stock dividends, the stock received as a dividend has been retained as a part of and added to the corpus of the respective trust holding the stock with respect to which it was declared, resulting in half of the stock dividend being added to the corpus of one trust and half to the corpus of the other. In the case of rights to subscribe, the "rights" have been sold and one-half of the net proceeds of such sales has been credited to corpus of each of the trusts, with no credit to income and no charge thereon in favor of the life-tenants. The beneficiaries, Charlotte and Grant, each consent that the entire proceeds of such sales and such stock dividends shall be treated as corpus. The trustees are in doubt as to whether the whole, or if not the whole, what part of the proceeds of the sale of such rights should be treated as principal and what part should be treated as income.
Likewise, the trustees are in doubt as to whether unexpended and undistributed income on hand at the end of each year in each trust should be treated as then becoming a part of the principal or corpus of such trust in their accounting, *Page 440 
or whether with respect to the contingent residuary legatees such income remains income until the respective deaths of the children, Charlotte and Grant, and then becomes a part of the respective estates of such children.
Charlotte and Grant are willing and desirous that no account should be filed by the trustees in any court and are satisfied to obtain a statement of account directly from the trustees but do not desire thereby that the trustees should be deprived of any lawful commissions to which they would otherwise be entitled. The contingent legatees, the Board of Foreign Missions of the Presbyterian Church in the United States of America, Board of National Missions of the Presbyterian Church in the United States of America and the Board of Christian Education of the Presbyterian Church in the United States of America, do not require any accounting by the trustees or executors at this time in this court or in any other court but do not waive their right to require such accounting hereafter if at any time in their opinion their interests shall so require. The trustees desire for the purpose of their accounting, as shown in the income tax returns filed by them, to credit and pay to themselves commissions on income annually hereafter until the further order of this court, at the rate of five per cent. per annum on net income received, and request such commissions with leave to include at this time commissions at said rate on income received as trustees heretofore.
The first question is as to whether the residuary estate shall be divided into two separate trust funds — one held for each child — or whether there shall be one trust only. It seems to me that the will contemplates two separate trust funds.
By the eleventh clause of the will the trustees are authorized to use a part of one-half of the principal in the purchase of a residence for Charlotte, and to use other parts in the establishment and maintenance of any business or profession which she may enter. The same clause authorizes the trustees to give to Grant, from time to time, after he shall have attained the age of twenty-five years, any portion or all of the other one-half of the principal. The will also contains separate directions as to the ultimate disposition of the principal. *Page 441 
The twelfth clause is a gift over of the principal of the one-half of the residue, reduced by any purchase of a residence for Charlotte, to any person or persons nominated by her in her last will and testament. There are other remaindermen nominated in case she leaves no will.
The thirteenth clause is a gift over of the other one-half of the residue or the balance thereof which shall not have been paid to Grant, as he shall by his last will and testament direct. Here, too, there are other remaindermen mentioned in the event that he leaves no will.
In order to ascertain at the death of Grant and Charlotte what property is subject to appointment by their respective wills, it is necessary to keep separate a trust for each. The testator's idea, as I gather from the will, was an equal division of his estate between his children with directions to the trustees to withhold the principal and distribute only income according to the necessities of the children, with advancements of principal in the discretion of the trustees, and there is no provision for both children or the survivor. This being so, it is necessary to create separate trusts as to the income.
The court is asked to define the correct meaning of the word "accrued" as used in the twelfth and thirteenth clauses. Without going into an elaborate discussion of this matter, it seems clear that it is used here as a synonym for "accumulated," that is, if a distribution should be made of the principal and there is an unexpended amount of income, the income should be distributed as is the principal in each trust.
It appears that at end of each year, since the will was probated, there have been accumulations of surplus of that year's income. The question then arises as to what shall become of this surplus and how it shall be treated. I think the income so accumulated should be reinvested and become principal at the end of each year. This arrangement is consented to by the life tenants whose interests alone are affected.
The trustees ask this court to allow them commissions on income at the rate of five per cent. each year during the continuance of the trust. They also ask that at the same *Page 442 
time the court decree that they need file no accountings as are required by the statute (3 Comp. Stat. pp. 3852, 3853 §§ 114,115, c.), but have authority "to keep their accounts and make charges and credits therein upon the basis which they have been advised will be most conducive to an economical and orderly administration of the estate." The younger of the life tenants is twenty-three years old, so that the trust may run for about forty years. The beneficiaries, they say, have consented that they need not account in any court. It is a novel, not to say startling, idea to request a court of conscience, even with the consent of the beneficiaries, to advise a decree which clearly violates the laws of this state, and to fix commissions on future accounts covering a possible period of forty years for services not yet rendered, which are never to be filed nor audited. If the complainants desire commissions, either as executors or trustees, their only course is to file proper accounts at the proper time in the proper court, and have these accounts audited and allowed according to the provisions of the statutes which govern the case.
It appears by the stipulation that the trustees have sold rights to subscribe and have allotted the proceeds to principal. Also, there have been stock dividends. Under the circumstances in this case, I consider it proper to allocate these to corpus.
This is so because the beneficiaries who alone are affected, consent thereto.
Under the provisions of the fourteenth clause of the will, when Grant shall have attained the age of twenty-five years, he is to be appointed a trustee under the will. He is now twenty-three years of age. The trustees hold that under the provisions of the last part of the eleventh clause Grant has no authority, even when he becomes a trustee, in determining whether any or all of one-half of the principal of the residue shall be paid to him at any time. The court will not pass upon unnecessary questions or those that may arise in futuro but which are not presently before it. Grant may never become trustee. Therefore, it is unnecessary to decide this question at this time. *Page 443 
The trustees also desire the court to hold that the provisions of the will do not permit the children at any time to demand all of the annual income. It is apparent that it is necessary to decide this question because of the Revenue act of 1928, with respect to income received by fiduciaries. The language of the will clearly indicates that the amount of income to be received by the beneficiaries is in the discretion of the trustees, and I will so hold. The life tenants may, however, at any time apply to this court on the ground that the allowances to them are unreasonable and that the trustees have abused the discretion vested in them by the testator.