Joseph Joselson died on January 21st, 1930, leaving a last will and testament, which, on May 9th, 1930, was admitted to probate and letters testamentary thereon were issued to Emma Joselson, his wife, and the First National Bank of *Page 181 
Perth Amboy, New Jersey, who were respectively named executrix and executor. The complainant seeks a construction of the will and has named herself and the bank defendants to the suit. In her individual capacity, she is the complainant; in her said representative capacity, she is a defendant. The complainant and defendant have agreed upon the following statement of facts:
"Complainant, Emma Joselson, of the city of Perth Amboy, Middlesex county, New Jersey, files this bill for construction of the will of her late husband, Joseph Joselson, deceased, late of the same place, who died on January 21st, 1930, leaving a last will and testament which was on May 9th, 1930, duly admitted to probate and letters testamentary issued to said Emma Joselson and the First National Bank of Perth Amboy, New Jersey, a corporation of the United States of America, the executors therein named. Said complainant has made said executors, including herself in said representative capacity the defendants to this suit. * * * Among its provisions are:
"`First. I desire that all my just debts and funeral expenses shall be paid as soon as they conveniently may be paid after my decease.
"`Third. I give, devise and bequeath to my Executors and Trustees hereinafter named all my property, both real and personal, in whatever it may consist or wherever situate in trust, to invest and reinvest the same and to pay the rents, issues, income and profits thereof to my beloved wife, Emma Joselson for and during the term of her natural life and as long as she remains my widow; and from and after her decease or remarriage I direct the said income from my said estate to be paid to such children as I may leave until they respectively arrive at the age of twenty-five years, and upon their arrival at the age of twenty-five years to pay the principal to them in equal proportions, share and share alike. If, however, my said property is bringing a good income I desire that the same shall not be sold and divided for a further period of five years, in the discretion of the Trustees. In the event of the remarriage of my said wife, I give to her the sum of ten thousand dollars ($10,000) only. The above provisions in favor of my said wife are to be in lieu of any dower to which she may be entitled in any of my said property.'
"That there is now in the hands of the executors approximately $8,000 which represents rents, issues, income and *Page 182 
profits of the real estate properties accrued since the death of the testator. (The executor's commissions in regard to same have not been exacted or paid nor as yet any allowances made in regard thereto.)
"The said Emma Joselson has not remarried and is still the widow of said testator. The estate has numerous creditors.
"That on the 10th day of April, 1931, the aforesaid estate of Joseph Joselson, upon application of said executors, was decreed to be insolvent by the Middlesex county orphans court and the executors were directed because of inadequate personal assets to proceed with the sale of the real estate in order to pay the debts. Although the properties were put up for sale, there were no purchasers and none have been sold by the executors. In the report of claims, and inventory and account of the real and personal estate of the decedent, rents, issues, profits and income of real estate were included in the assets belonging to the estate in the hands of the executors and also in an accounting filed but not passed on. It is admitted that the complainant in affixing her signature to the aforementioned papers and in verification included the said rents, profits, issues and income from real estate in her figures through mistake, ignorance or inadvertence.
"The rents, issues, profits and income involved all accrued after the 10th day of April, 1931. or the date of the order to sell the lands to pay debts.
"The complainant, Emma Joselson, claims that under the provisions of paragraph 3 of the last will and testament of her late husband that the gift of rents, issues, income and profits of the properties is tantamount to the devise of the land itself and that she is entitled to the rents collected now in the hands of the executors and asks this court to construe said will and declare her rights thereunder. Said will gave the executors a power of sale over the real estate.
"The defendants have answered denying such right to the rents of the lands."
The complainant is within her rights in applying to chancery to seek a construction of the will. In Potter v. Watkins, *Page 183 99 N.J. Eq. 538, it was held that a "suitor seeking construction of will must have a fixed equitable right of future enjoyment in the subject-matter thereof; the subject-matter in litigation must be ripe for decision; decree must be binding on all parties interested, and all parties in interest must be before the court." The complainant's position is further justified under the provisions of Cum. Supp. Comp. Stat. 1924 p.271, which reads as follows: "Any person claiming a right cognizable in a court of equity, under a deed, will, or other written instrument, may apply for the determination of any question of construction thereof, in so far as the same affects such right, and for a declaration of the rights of the persons interested."
The complainant has an estate in the property involved, and is entitled to the rents, profits and income thereof under the will, for and during the term of her life and as long as she remains the widow of the testator, and as one of the estate's representatives, she is charged with the duty of collecting, investing, and paying over the said rents, profits and income.Torrey v. Torrey, 55 N.J. Eq. 410.
Since the estate has been decreed insolvent, who, then, becomes entitled to the rents and profits from the real estate devised under paragraph 3 of the will — the devisee or the creditors?11 R.C.L. 123 § 127, says:
"The rents of the real estate accruing subsequently to the death of the owner are regarded as part of the realty from which they are derived, and as belonging to the heirs and as not being assets passing to the executor or administrator. As against heirs, therefore, the general rule is that an executor or administrator has no right to the rents accruing from the real estate after the death of the decedent. So, if rents accruing after the testator's death come into his hands he cannot apply them to the payment of debts of the decedent, and if, without authority, he collects rents of the decedent's real estate and uses them as assets in paying the debts of the estate, he will be liable to the party entitled to such rents, who may bring an action against him for them. Where the personal representative holds possession of the real estate he is usually deemed to receive the rents and profits as trustee for the heirs, not for the creditors. The normal rule is that where the title of the heir is divested in order to apply the real estate as assets in payment of the decedent's debts the heir meanwhile is deemed the owner and is entitled to the rents and mesne profits. But in some jurisdictions an *Page 184 
administrator or executor is, by statute, given the right to intercept the rents in certain cases for certain purposes, and apply them as assets for the payment of debts."
23 Corp. Jur. 1139 ¶ 330 et seq., has the following to say:
"The rents, profits, and income of a decedent's real property accruing before his death vest in the personal representative as assets; but those accruing after his death are not assets, but vest in the heir or devisee, even though the rent was expressly reserved to the lessor, his executors, administrators, and assigns, and the fact that the land was sold to pay debts does not deprive the heirs or devisees of their right to rents which accrued between the time of decedent's death and the time of the sale. It follows that the personal representative cannot release the tenant from rent accruing after decedent's death in consideration of his giving up possession. * * *
"The rule that the rents and profits of real estate accruing after the death of the owner are not assets, but belong to the devisees or heirs-at-law, is usually held to apply, although the estate is insolvent and the rents have come into the hands of the executor or administrator, unless he has received them under an agreement with the heirs or devisees that they should be assets to save the real estate from sale, or for the advantage of all persons interested, or unless the will gave him the rents to be administered as assets; although there is also authority for the contrary view.
"In some jurisdictions it is held that if the executor or administrator actually collects rents accruing after the decedent's death, he is responsible for them as assets, but the more generally accepted view is that the rule that rents of real estate accruing after the owner's death are not assets of his estate is not affected by the mere fact that they have come into the hands of the executor or administrator, even though the land is subsequently sold for the payment of debts. According to this view, if the representative collects and receipts for rent as such, which rent was not the property of his decedent he is liable in assumpsit to the true owner of such rent."
The nearest approach in principle to the point to be determined, appears in the rule laid down in the case of Paletz
v. Camden Safe Deposit and Trust Co., 109 N.J. Eq. 344. In that case Vice-Chancellor Leaming in part said:
"The primary issue here involved is whether, in the settlement of the estate of a testator in which the personal assets are found insufficient to discharge testator's debts, the executors are entitled to the rents of the real estate owned by testator at the time of his decease. This inquiry must be answered in the negative. By his will testator bequeathed to *Page 185 
his wife the income of his real and personal property for her life or widowhood, and at her death or remarriage the residue of his estate was given to his children. He then appointed defendant trust company his executor. No power of sale was given to executors, and no provision in the will directs the payment of the debts of testator or creates any charge on the real estate or its income. The executors have collected rents which have accrued since testator's death under leases of his real estate made by testator in his lifetime. Testator's personalty proving inadequate to pay his debts, the orphans court has regularly made an order for the sale of the real estate to pay debts. Complainant, the widow, seeks an accounting from the executors of the rents collected by the executors prior to and since the order of the orphans' court. * * * The established rule is that a gift of rents and profits of land, in the absence of any expression of a different intention, is tantamount to a devise of the land itself. Diament v. Lore, 31 N.J. Law 220 (at p. 222);Passman v. Guarantee Trust and Safe Deposit Co., 57 N.J. Eq. 273
(at p. 276). Accordingly, complainant must be here recognized as enjoying an estate for life or widowhood in the lands here in question.
"At common law, rents were regarded as an incident to the land, and at the death of an intestate or a testator go with the land to the heir or devisee as its incident, except rents accrued and payable in the lifetime of the deceased; those go to the executor or administrator as a part of the personal property. 3 Bac. Abr.tit. "Executors and Administrators" (at p. 63). That may also be regarded as the settled law of this state, except in so far as it may be found modified by our statutes. Demars v. Koehler,60 N.J. Law 314 (at p. 316); Condit v. Neighbor,13 N.J. Law 83 (at p. 91). Even accruing rents, which become payable at a day subsequent to the death of the lessor, must be sued for by the heir or devisee, and not by the administrator or executor of the lessor. Allen v. Van Houton, Adm'r, 19 N.J. Law 47.
"The only statute which can in any way be said to confer upon executors or administrators powers or duties touching *Page 186 
real estate is our Orphans Court act. P.L. 1898 p. 715; 3 Comp.Stat. 1910 p. 3809 et seq. Section 81 of that act (3 Comp.Stat. 1910 p. 3838) provides that:
"`The lands, tenements, hereditaments and real estate of any person who shall die seized thereof, or entitled to the same * * * shall be and remain liable for the payment of his or her debts, for one year after his or her decease, and may be sold by virtue of an order of the orphans court.' The supplemental act of 1920 (P.L. 1920 p. 577; Cum. Supp. Comp. Stat. p. 2616 ¶ 146-81a), in no material way changes the section quoted, except to specifically limit the period of time beyond which the liability should not extend. Since the section above quoted and the succeeding sections touching the method of its enforcement clearly provide that, in the event of inadequate personal assets, the real estate may be sold to raise the necessary fund to pay the debts, it is urged that rentals of the real estate up to the time of sale should be received by the executor and applied in like manner. The act does not so provide, and the provisions of the act throughout specifically relate to the sale of the land, and nowhere suggest an administration of the rentals. The sale is of the real estate, and the proceeds of the sale are to be reported to the court by the executor or administrator. InHaines v. Price, Ex'r, 20 N.J. Law 480, the court, in reviewing the force and effect of this act — then essentially the same as now — (at p. 485, 486), says:
"`Lands in this state have been made liable for the payment of the debts of the decedent, in certain modes prescribed by law; but they are not assets. They are not, says Chief-Justice Hornblower, "by force of any statute in any sense, in the hands of, or subject to, the control of executors or administrators. They are not assets in their hands; but in certain cases they may be made or converted into assets for the payment of debts, by a decree of the orphans court." O'Hanlin v. Den, ex dem. VanKleek, 20 N.J. Law (1 Spen.) 34.
"`The personal estate is, and the real estate may be made assets.' Per Chief-Justiec Ewing (Den, ex dem. Warwick *Page 187 
v. Hunt, 11 N.J. Law (6 Hal.) 7, 8. These dicta, defining the legal character of real estate before it is affected by the legal proceedings, by which it may be converted into money, are in clear conformity with the statute. Land is not in the hands or subject to the control of executors, or administrators, qua
executors or administrators. By the provision of the statute, it is the money arising from the sale of the real estate of the decedent, received by the executor or administrator, which shall be considered as assets in his hands for the payment of debts. Act 18th February, 1799, paragraph 23; Elm. Dig. 490. Under our statute, to make them responsible at law to the creditors for the value of the real estate, it must first be sold and the money therefor received, and then and then only can it be considered as assets.
"In Haston v. Castner, 31 N.J. Eq. 697; Westervelt v.Voorhis, 42 N.J. Eq. 179, 180; 6 Atl. Rep. 665; Brown v.Wencher, 94 N.J. Eq. 710; 120 Atl. Rep. 637, and Axt v. 61Lincoln Park, 108 N.J. Eq. 459; 155 Atl. Rep. 537, it is held that under this act creditors have a lien on the real estate. Perhaps in view of Den v. Hunt, 11 N.J. Law 1, 7, 8, a more accurate statement would have been that in the circumstances stated in these cases creditors had rights in the general nature of liens which justified the equitable relief there sought; but even a technical lien does not ordinarily deny to an owner the revenues of the property. In this connection the case of Gibson
v. Farley, 16 Mass. 280, is convincing. There, as here, the real estate of the decedent is by statute pledged for the payment of debts, and the precise situation here presented arose in that case. The claim of the defendant was that, inasmuch as the real estate of persons deceased were subjected by law to payment of their debts and as the rents follow the land, the legislature intended that creditors should have the incident as well as the principal. In disposing of that contention, the court there says:
"`That [the land] descends by law to the heirs and they accordingly may enter immediately. They take the estate pledged indeed for the payment of the debts. If it should be wanted for that purpose a mode is prescribed by the statute, whereby the executor or administrator may be authorized *Page 188 
to make sale of it. But until such authority is obtained, the right to possess the real estate is in the heirs.'"
The court of errors and appeals in In re Roessler's Estate,110 N.J. Eq. 570, held that an administrator is not entitled to rents and the proceeds of the sale of realty although he took title to the real estate in trust from the heirs.
In Brown v. Fessenden, 81 Me. 522; 17 Atl. Rep. 709, the court said: "It is the settled law of this state that rents and profits of the real estate of a deceased insolvent debtor, until it shall be sold for the payment of debts, belong to the devisee or heir-at-law, and not to the executor or administrator."
In the case of Bittle v. Clement, 54 Atl. Rep. 138, Vice-Chancellor Grey said: "There is a matter which appears in the orphans court account of Benjamin as executor of Daniel Bittle, as to the disposal made of the rents of Daniel's lands since his death, and before his executors made sale of them. Rents accruing after the death of a decedent and before the exercise of a power of sale, go with the title to the land to the heir or devisee, and not to the executor or to the purchaser under the power."
In the case of Ware v. Hall, 16 N.J. Law 333, it was held that "rent accruing after the testator's death belongs to the heirs in case it is not disposed of by the will." Condit v.Neighbor, 13 N.J. Law 83.
The law in this state seems to be well settled that the heirs or devisees are entitled to the rents and profits from real estate after the death of a decedent and before a conveyance is made of said lands; but, I have been unable to find any case in this state deciding what the rights of the heirs or devisees are to the income from real estate after an estate has been declared insolvent.
A gift of income for life, or an absolute direction to the trustee to pay the income for life, gives a life interest of a legal or equitable nature as the case may be, in the property from which the income is to arise. Page on Wills (2d ed.) ¶846. A gift of rents and profits of land for life is a gift of the land itself for life. Thompson on Construction of Wills 460
¶ 329. *Page 189 
I do not feel that paragraph 1 of the said will, as therein expressed, gives the creditors any superior consideration or right of precedence over the devisee. "A direction to the executor to pay debts, followed by legacies to others, and a general residuary gift with power of sale to the person who is appointed executor, gives the rents to such devisee until a sale." Page on Wills (2d ed.) ¶ 1299.
The complainant contends that, notwithstanding the decree of insolvency, she is entitled to the income until the property is actually disposed of by sale; and this, despite the fact that an unsuccessful attempt was made by the executors to dispose of the property. While it seems harsh to apply the rule that the heirs or devisees are entitled to the income from the property as against the creditors of the estate, it might be observed that the creditors were not without a remedy in the orphans court: they could there have proceeded against the executors for delaying or failing to take action under the decree or order of insolvency issued by that court. The devisee, individually, or as executor, did not hamper the contemplated sale; she co-operated with her co-executor and tried to effect a sale. The rule, under the decisions, favors the right of the heir or devisee to the rents or income issuing from the realty until the realty is disposed of by sale. I can find no exception.
I shall, therefore, advise an order that under paragraph 3 of said will, the said widow is entitled to the rents, issues, income and profits arising from the real property of the testator, Joseph Joselson, for and during the period of her natural life, or, for as long as she remains the widow of the testator, or until the power of sale granted to the executors and trustees named in said last will and testament is exercised and the realty sold, in which latter event, the said widow then no longer will be entitled to such income; and I shall further advise that in the event the said real estate is sold or disposed of under the said order of insolvency of the orphans court, the said devisee shall be entitled to the said rents, issues and profits from said real estate up to the date of said sale. *Page 190