It is perhaps precautious to note initially that this court as a matter of policy will normally decline to interpret and construe testamentary passages alleged to be nebulous unless there is some present or imminent need for enlightenment.Stewart v. Stewart, 61 N.J. Eq. 25; 47 Atl. Rep. 633; Ogden
v. McLane, 73 N.J. Eq. 159; 67 Atl. Rep. 695; Kellogg v.Burnett, 74 N.J. Eq. 304; 69 Atl. Rep. 196; Matlock v.Matlock, 98 N.J. Eq. 572; 131 Atl. Rep. 212; Potter v.Watkins, 99 N.J. Eq. 538; 134 Atl. Rep. 84; Caldwell NationalBank v. Rickard, 103 N.J. Eq. 516; 143 Atl. Rep. 745;Titsworth v. Titsworth, 107 N.J. Eq. 436; 152 Atl. Rep. 869;Joselson v. Joselson, 116 N.J. Eq. 180; 172 Atl. Rep. 812;March v. Norristown Penn Trust Co., 123 N.J. Eq. 282;197 Atl. Rep. 276; Schumacher v. Howard Savings Institution, 128 N.J. Eq. 56,63; 15 Atl. Rep. 2d 107; affirmed, 131 N.J. Eq. 211; 23 Atl. Rep. 2d 581; 1 Barbour's Ch. Pr. (2d rev.ed.) 332 c. 12.
Yet the power of this court to construe a will irrespective of other equitable relief, and to determine and declare the rights of beneficiaries therein involved is not exposed, I think, *Page 282 
to any substantial doubt. In re Ungaro, 88 N.J. Eq. 25;102 Atl. Rep. 244; R.S. 2:26-68; N.J.S.A. 2:26-68.
The testator, Frank R. Jones, executed his last will and testament on April 19th, 1936. He died on April 9th, 1939. He left for testamentary distribution an estate of an estimated value in excess of $800,000. The present inquiry is concentrated upon the fifth article of the will which may be here literally exemplified:
"Fifth: Excepting and reserving the sum of One Thousand, Two Hundred Dollars ($1,200.00) annually, hereinafter given my mother, and also the provisions hereinafter for my two sisters, Grace J. Holland and Martha W. Jones, I also give and bequeath unto my said wife the entire income from my estate and property from the day of my death so long as she, my said wife, shall survive, to be paid to her at different periods through each year as the same shall be available, and in case the income so directed to be paid her at any time shall be insufficient, in the opinion of my executors or trustees, to provide her with all the necessary comforts, conveniences and enjoyments of life, suited to one in her station, then, and in such case, I give unto her so much of the principal of my estate as in the opinion of said executors or trustees may be necessary for such purposes.
"Should it be demonstrated, however, that she will not use all of said income, then, at the end of each year, after making provision for payment of taxes and expenses and for the payments to my said mother and sisters, such unused and unreserved income shall be added to the corpus of my estate and be disposed of as herein directed."
The point concerning which the complainants experience doubt is presented by them in their brief in the following fashion: "The sole issue is as to whether or not `station in life' refers to that mode of living in fact followed by the testator (and his wife) during the last years of his life, or whether it refers to a mode of living to be determined by the life tenant or by the executors in view of the size of the testator's estate or which the life tenant, in the exercise of her own discretion, might prevail upon the executors to approve. In exercising their discretion, what test or limitation has the testator placed upon the executors?"
The occasion for the present proceeding is said to arise from the diversity of the opinions of the life tenant and those having interests in remainder respecting the circumstances in which the testator intended the corpus to be invaded for the beneficial advantages of his widow, the life tenant. *Page 283 
The complainants and the remaindermen incline to the view that the testamentary phrase "necessary comforts, conveniences and enjoyments of life suited to one in her station" restricts the authority of the fiduciaries to invade the corpus to amounts, if any, reasonably required to afford the life tenant the same comforts, conveniences, and enjoyments theretofore customarily supplied to her by the testator. The life tenant proposes that she is entitled under the provisions of the will to such payments from principal as she in her estimation and judgment may require for her comforts, conveniences, and enjoyments, and that the duty of the fiduciaries to honor her requests is in pursuance of the intention of the testator and imperative, without regard to their "opinion" concerning the necessity or need of such allowances.
The cardinal rules in aid of the construction of wills have been recently recapitulated in Barrett v. Barrett, 134 N.J. Eq. 138; 34 Atl. Rep. 2d 579, and in Bottomley v.Bottomley, 134 N.J. Eq. 279; 35 Atl. Rep. 2d 475. The rules of construction, generated over a span of years by judgment and experience, afford guidance, but in this class of cases an investigation of the reported decisions so often seems to confirm the aphorism that "no will has a twin brother," and the duty adinstar remains to detect the intention of the particular testator from a studious consideration of the language of his will pursued in the light of the pertinent circumstances which in his individual case actually surrounded the composition of the will. Duane v. Stevens, 137 N.J. Eq. 329; 44 Atl. Rep. 2d716.
In quest of precedents having some helpful relevancy to the issue here in question, my attention has fallen upon the following cases among others: Lippincott v. Ridgway, 11 N.J. Eq. 526; Jacobus' Ex'r v. Jacobus, 20 N.J. Eq. 49; McKnight'sEx'rs v. Walsh, 24 N.J. Eq. 498; Stephens v. Howard's Ex'r,32 N.J. Eq. 244; Corlies v. Allen, 36 N.J. Eq. 100; Reeve v.Beekman, 42 N.J. Eq. 613; 9 Atl. Rep. 27; affirmed, 44 N.J. Eq. 295; 18 Atl. Rep. 80; Coffin v. Watson, 78 N.J. Eq. 307;79 Atl. Rep. 275; affirmed, 79 N.J. Eq. 643; 83 Atl. Rep. 1118;Gluckman v. Roberson, 116 N.J. Eq. 531; 174 Atl. Rep. 488; NewJersey Title *Page 284 Guarantee, c., Co. v. Dailey, 123 N.J. Eq. 205;196 Atl. Rep. 703; Camden Safe Deposit and Trust Co. v. Read, 124 N.J. Eq. 599; 4 Atl. Rep. 2d 10; Commonwealth-Merchants Trust Co.
v. Seglie, 127 N.J. Eq. 160; 12 Atl. Rep. 2d 153.
The federal courts have had reason to construe testamentary bequests somewhat similar. Notably, Ithaca Trust Co. v. UnitedStates, 279 U.S. 151; 73 L.Ed. 647; 49 S.Ct. 291; MerchantsNational Bank of Boston v. Commissioner, 320 U.S. 256;88 L.Ed. 35; 64 S.Ct. 108; Hartford Connecticut Trust Co. v. Eaton,36 Fed. Rep. 2d 710; First National Bank of Birmingham v.Snead, 24 Fed. Rep. 2d 186; Lucas v. Mercantile TrustCo., 43 Fed. Rep. 2d 39; Commissioner v. Robertson'sEstate, 141 Fed. Rep. 2d 855; Commissioner v. Wells FargoBank and Union Trust Co., 145 Fed. Rep. 2d 130.
The decisions to which I have referred furnish a serviceable background. A discriminative discussion of them would unduly dilate the verbiage of this memorandum; hence it will not be undertaken.
Scrutinizing attentively the testator's will, it is at once perceptible that the testator did not intend to bestow upon his widow, the life tenant, an unrestricted opportunity to demand and receive withdrawals from the "principal" of his estate. It is equally obvious that he desired to shelter his widow during the succeeding years of her life from any distressing pressure of financial insufficiency. I apprehend, however, that he envisioned such an eventuality as a possibility rather than a probability. Indeed, he contemplated evidently that the income bequeathed to his widow might likely exceed her requirements.
The will, viewed in its entirety, conspicuously displays the absorbing concern of the testator in the ultimate disposition of the corpus. He deliberately surrounded the permissible subtractions from the corpus with requisitions and limitations. In that endeavor, he expressly bade his representatives to perform two obligatory duties: first, to determine the sufficiency or alleged insufficiency of the income bequeathed to his widow; and secondly, if they resolved that the income *Page 285 
was inadequate, to estimate and adjudicate the amount of principal to be amputated from the principal for her use. The executors-trustees must heed his words. The testator said, "in case the income so directed to be paid her at any time shall be insufficient, in the opinion of my executors or trustees * * *" then "in such case, I give unto her so much of the principal of my estate as in the opinion of said executors or trustees may be necessary for such purposes." (Italics mine.) The testator assuredly predestined that in those exigencies the "opinion" of his representatives would be their settled judgment, their deliberate and conscientious conviction in regard to the testator's declared "purposes."
What was his purpose? It certainly was not his purpose "to provide" his widow with "comforts, conveniences and enjoyments of life" tinctured with extravagance, exorbitance, and lavishment. The testator employed the adjective "necessary" in modification of the words "comforts, conveniences and enjoyments of life," and then appended the informative phrase "suited to one in her station." While I surmise that "comforts, conveniences and enjoyments" deemed to be necessities by the rich may well be catalogued as luxuries by the poor, yet in the construction and interpretation of a will the words chosen by the testator ought to be understood to be symbols of his own mentations. He contemplated a continuation of the standard of living which he and his wife had deemed to be sufficiently desirable in their circumstances. Such was the "station" of life in which his wife was situated. In the absence of any divergent factor, I prefer to infer that the testator harbored the idea that the "necessary comforts, conveniences and enjoyments" suited to one in the station of his wife were those which he provided for her in his lifetime and to which in view of her age, position of respectability, normal inclinations and propensities she had been habitually accustomed to experience and would in the future in reasonable probability desire continually to possess. The notion that the testator intended to render the reserved corpus of his estate absolutely subordinate to any bombastic whim of the life tenant is not plausible.
The testator and his wife were frugal and thrifty rather *Page 286 
than prodigal in the expenditures of their funds. For several years following the testator's retirement from business and during those immediately preceding his death, it was his practice to augment annually the principal of his estate with substantial sums of unexpended income. At the time of his death, his wife had an estate of her own amounting approximately to $85,000. She had then arrived at the age of seventy-six years, which the testator indubitably regarded as one of the elements "of her station" in life.
The annual income derived by the life tenant from the trust during the past six years has ranged from a minimum of $18,429.78 to a maximum return of $24,729.85. In the years 1940, 1941, 1942 and 1943, her annual income from the trust has exceeded $20,000. Indeed, her counsel does not represent that the trust income is actually inadequate for her normal requirements. Manifestly the provision permitting an invasion of the corpus was designed to protect the widow from the infelicitous consequences of some possible emergency of the character which he described, otherwise the corpus was to be muzzled for an undiminished distribution to the residuary beneficiaries.
A fitting construction of this will, warranted by a circumspect consideration of its terms and provisions, proceeds betwixt the courses marked by many of the somewhat pertinent decisions. Here the testator did not confine the bequest to his widow to an income to be measured by the actual necessities of her support and maintenance. Vide, Corlies v. Allen, supra; Reeve v.Beekman, supra; Coffin v. Watson, supra; Gluckman v.Roberson, supra; Camden Safe Deposit and Trust Co. v. Read,supra.
Nor did he intend to subordinate the trust corpus and his residuary bequests to the unconditional and unrestrained over tures of the life tenant. Vide, Lippincott v. Ridgway, supra;New Jersey Title Guarantee, c., Co. v. Dailey, supra.
My conclusion is that the testator intended that his widow, the life tenant of his trust, should currently receive during her life from his estate sums sufficient to enable her to continue to have the same or comparable "comforts, conveniences and enjoyments" to which she had been accustomed and which *Page 287 
would be in keeping with her usual and prevailing mode of living. Upon the trustees devolves the duty to determine the adequacy of her income to fulfill and accomplish the object of the testator. That duty has been confided to the trustees and is one for them to exercise and perform bona fide.
Although from the evidence I conjecture that under the limitations of the will, as I have construed them, there is little likelihood of any justifiable need to attack the corpus
of the trust, I venture to recommend to the trustees that in undertaking to resolve the sufficiency of the widow's income, they might well consider the standard of living maintained by the testator and his wife during the period between the execution of the testator's will and the date of his death. During that interval it seems to have been uniform. It was presumably the standard in the contemplation of the testator.
Let me add that there is nothing in the testator's will to indicate an intention that his widow in the event of an insufficiency of trust income should first resort to her own independent and personal income. Her separate income should therefore be ignored by the trustees in the discharge of their duties under the will of the testator.