Robeson *v.* Shotwell.

JACOB S. ROBESON, executor of Jacob R. Shotwell, deceased,

*v.*

JOSEPH D. SHOTWELL, executor of Jacob R. Shotwell,
deceased, et al.

1. Testator gave all his estate to his wife, "for her sole use, benefit and enjoyment during her life, with full power to sell and dispose of any of said property, * * * and to use the proceeds thereof in such manner as she may desire," and directed his executors, on her death, to divide "such property as may then remain," among certain persons named. By a codicil, he gave his wife $10,500, "for her sole use and benefit, with full power to dispose of the same by will or otherwise."—*Held*, that the wife took a life estate only in the personal property, other than the $10,500, with a power of disposal and appointment by act taking effect during her life, for her own benefit.

2. Where testator's widow was given a life estate only in personal property, with power of disposal and appointment, by act taking effect during her life, for her own benefit, such power was not exercised by the sale of such property by the executor, with the consent of the widow, who allowed the executor to hold the legal title to the proceeds without further directions from her.

3. Nor was such power exercised as to a bond and mortgage by the surrender of them to the mortgagor by the executor, and the receipt by the latter of a deed of the mortgaged property from the mortgagor, with the widow's consent.

On bill, answers, replications and proofs taken orally.

*Mr. Edward A. Day* and *Mr. Cortlandt Parker*, for the complainant and legatees of Martha S. Shotwell.

*Mr. Benjamin A. Vail* and *Mr. Thomas N. McCarter*, for the defendants and residuary legatees of Jacob R. Shotwell.

*Mr. Schuyler B. Jackson*, for the legatee of Martha S. Shotwell.

EMERY, V. C.

This case involves the construction of the will of Jacob R. Shotwell, deceased, under which two questions arise—*first*, whether the bequest and devise made by the testator to his

wife, Martha S. Shotwell, conferred upon her an absolute estate in the personal property, or whether she had only a life estate, with a power of disposal of the property and its proceeds; and in case it should be held that she had only a life estate with a power of disposal, then, *second,* whether this power of disposal and appointment of the proceeds was exercised over any of the property in such way as to dispose of it under the power. The decision of the first question depends altogether upon the construction to be placed upon the will itself, and the entire provisions of the will and codicil have been referred to for the purpose of arriving at the construction. The will, dated March 10th, 1888, and the codicil, dated July 3d, 1890. are as follows:

### WILL.

·"I give to my beloved wife, Martha S. Shotwell, all the property that I possess, both real and personal, for her sole use, benefit and enjoyment during her life, with full power to sell and dispose of any of the said property, both real and personal, and to use the proceeds thereof in such manner as she may desire.

"After the death of my wife, I do authorize and direct my executors to divide such property as may then remain, as follows:

"To my niece, Martha S. Howell, the sum of twenty-five hundred dollars.

"To my nephew, Jacob S. Robeson, the sum of twenty-five hundred dollars.

"To my niece, Eliza J. Stroud, the sum of one thousand dollars.

"To the 'Society for the relief of the sick poor,' the sum of two hundred dollars.

"To my nieces and nephews, the children of my deceased brother, Henry R. Shotwell, I leave the residue of my property to be equally divided amongst them.

"I appoint my nephews, Joseph D. Shotwell and Jacob S. Robeson, executors of this my last will, with power to sell real estate."

### CODICIL (dated July 3d, 1890).

"I, Jacob R. Shotwell, do hereby make this codicil to my last Will and Testament.

"I give to my beloved wife, Martha S. Shotwell, for her sole use and benefit, with full power to dispose of the same by will or otherwise, the sum of ten thousand five hundred dollars."

The testator died May 10th, 1894, leaving his widow surviving him and seized of real estate and a considerable personal estate. On May 21st, 1894, the defendant Joseph D. Shot-

well, one of the executors, proved the will and took out letters testamentary, and under these took possession of the testator's personal estate and assumed the administration thereof. His inventory of the personal estate amounted to $19,863.83. During the lifetime of Martha S. Shotwell, who died in January following, this defendant sold and converted some of the personal estate which came to his hands, with the knowledge and consent of Martha S. Shotwell, but during her life she received no portion of the principal of the estate nor any portion of the principal of her legacy of $10,500 given by the codicil, but received only the interest on all of the personal estate, the latter remaining in the custody and control of the defendant Joseph D. Shotwell. Complainant took out letters testamentary on Jacob R. Shotwell's estate subsequent to the defendant executor, but has not received any of the estates. Martha S. Shotwell died January 22d, 1895, leaving a will by which she devised and bequeathed the entire residue of her estate (after paying certain legacies) to the present defendant Martha S. Howell, and appointed the complainant, Jacob S. Robeson, and the defendant Susan G. Robeson her executors. Eliza J. Stroud, one of the legatees named in the will of Jacob R. Shotwell, to take after the death of his wife, also died after the probate of his will, and the complainant and Susan G. Robeson are also the executors of her will. The nieces of Jacob R. Shotwell, who are by his will to take after his wife's death, are parties defendant to the bill, the complainant executor and the defendant executor being the nephews who are to take.

Pending the suit and upon the coming in of the defendant executor's answer, showing that he held in hand sufficient funds to pay the $10,500 legacy to testator's wife, made by the codicil, an order was made that this be paid into court, and this was subsequently, on notice to all parties, directed to be paid to the executors of Martha S. Shotwell. The present contest, therefore, is as to the remaining personal estate belonging to the estate of Jacob R. Shotwell, including a tract of real estate which was conveyed to the defendant executor in satisfaction of a $6,000 mortgage thereon, which was part of the personal estate of

testator, coming to his hands. And the dispute is substantially between those who claim under the wife as entitled to an absolute estate, on the one hand, and those who claim under the testator's will as residuary legatees of the property which remained after the death of the wife, on the other.

For those claiming under Martha S. Shotwell, it is insisted that she received by the will the absolute estate, and that the gifts over are therefore void, while, on the other hand, it is claimed that Martha S. Shotwell had only a life estate, with a power of disposition and appointment for her own benefit over the estate during her life, and that so far as this was not exercised, the gifts over take effect. The first question, therefore, is as to the extent of the estate of the first taker (Martha S. Shotwell) under this will.

Upon this question I reach the conclusion that the testator did not intend to bequeath the absolute estate to his wife, but to give her a life estate only, with a power of disposal and appointment, which she had the right to exercise if she chose, by act taking effect during her life, for her own benefit. This conclusion is based on these considerations: The testator, at the outset, himself limited the character and duration of the estate, by expressly confining the use, benefit and enjoyment to the life of his wife. When such life estate is granted by certain and express terms, and there follows then an addition of powers of disposal or appointment to the estate for life, the general rule relating to the effect of adding these powers to the express life estate is that they will not have the effect of conferring an additional right of property upon the life tenant by being construed to enlarge to a fee or absolute estate the estate which had been previously expressly declared to be for life only, but will be carried into effect only as powers over the property given to the holder of the life estate. This general rule is no longer open to discussion. *Borden* v. *Downey, 6 Vr. 74 (New Jersey Supreme Court); S. C. on error, 7 Vr. 460; Wooster* v. *Cooper, 33 Atl. Rep. 1050 (Errors and Appeals, March, 1896).*

The distinction, made from the time of the earliest cases, is between an estate given indefinitely in the first instance and one

given expressly for life, and although, as was said by Sir William Grant, in *Bradley* v. *Westcott, 13 Ves. 452 (1807)*, the distinction is perhaps slight, it is perfectly established, and, under the language of the decisions of our courts, I think it may be said to be a rule of construction which is a rule of property so far as a general rule of construction can be applicable to wills.

In *Wooster* v. *Cooper* the rule was applied to a bequest of personal property as well as a devise of real estate. The testator had there given an estate for life in express words to his wife, " with the sole power to manage and control the estate and keep, use, sell and dispose of the same as she should see fit, the executors during said time not to be responsible." From and after the death of his wife the testator then limited over all his estate " which shall then remain," and it was held that the estate of the wife was only a life estate and that she had no power to dispose by will of the property, real or personal, which remained undisposed of, but the same went to the persons to whom it was limited over.

Counsel for Mrs. Shotwell's legatees insist that *Wooster* v. *Cooper*, as well as *Downey* v. *Borden* and *Pratt* v. *Douglass*, upon which it is founded, are distinguishable from this case in a vital particular, which brings this case within the general rule making the estate an absolute estate, and not within the exception that makes it a life estate.

The distinction relied on is that in the present case there is not only a power of absolute sale and disposal, but an express power in addition, to use the proceeds thereof at her pleasure, and that this use was not annexed to the powers in the previous cases. It is insisted that the effect of such a power to use the proceeds is to make the power over the property practically and legally absolute for all purposes in the life tenant, and therefore to create so absolute an estate and right of property that not only the limitations beyond it are void, but the power given must be taken to express the testator's real intention as to the character of her estate and to supersede his express declaration limiting her estate to one during life.

. In *Pratt* v. *Douglass, 11 Stew. Eq. 516*, there was annexed to

an express life estate a power of disposal to the life tenant (the wife of testator, who was also testatrix) as she should see fit and proper, and to sell in such case as executrix, but with no express disposition of the proceeds. Mr. Justice Depue (at *p. 534*), in construing the will to give only a life estate, relied upon this omission to give the wife the proceeds, when taken in connection with the express direction to sell in the fiduciary character, and also with the limitation over of what remained after the death of the wife to other persons, as indicating that only a life estate was taken. In *Wooster* v. *Cooper*, however, while the power of disposing of the proceeds of sale was not given to the wife in express terms in those very words, yet the power expressly given would seem to have included this power to use or dispose of the proceeds of sale for the wife's own benefit, and inasmuch as the court did not rely upon the absence of such express power over the proceeds as a point in the construction of the will, I am inclined to consider *Wooster* v. *Cooper* as settling the point now raised against the life tenant. But taking the point not to have been expressly raised and decided by that case, and that this will must be construed on its own terms also, I am of opinion that the additional power given in this case to the life tenant of the right to use the whole or any portion of the proceeds of the sale or conversion which she has the power to make, cannot change the application of the rule.

The vital question in such cases is whether, on the construction of the whole will of the testator, the absolute property has been given to the first taker or only a power over the property. That the power over the property may, if she chooses, be exercised absolutely by the life tenant for her own benefit does not, as it seems to me, of itself convert the power into property or override all other provisions of the will. That could not have been the intention of the testator in this case, for he contemplates that his wife may not exercise the power of sale or disposal which he confers upon her, and he disposes of the property which remains after her death undisposed of or unappointed under the power. The testator's intentions, as declared in his will, can be carried out, as to all its substantial provisions, by

holding it to confer what, on the face of it, it purports expressly to confer, viz., a life estate, with a power of disposal for the life tenant's benefit, and then a disposition of so much as was not appointed under the power. And I see no reason why all of the express declarations of the testator should not be carried into effect, especially when, by carrying it into effect, I follow a general rule of construction applicable to such cases, and no rule of law as to the nature of estates is violated.

Counsel have not referred me to any authority which seems to establish the rule of construction that where a life estate has been expressly given, the power to appoint absolutely for the benefit of the donee is of itself sufficient to convert the power into an estate or property and to supersede by construction the express previous limitation of the estate and the express subsequent limitation over the property not appointed under the power.

In *Kendall* v. *Kendall, 9 Stew. Eq. 91* (at *p. 96*) (*Chancellor Runyon, 1882*), there was a gift for life, with power to use for her own benefit, but no limitation over to indicate that it was a power and not property which the testator had in mind, and this omission was relied on in construing the will.

In *Pennock* v. *Pennock, L. R. 13 Eq. Cas. 144*, a husband, who held the legal title as trustee, had an express estate for life, for his own benefit, in the rents, profits and increase, with power to take and apply the whole or any part of the capital arising therefrom to his own benefit. There was a devise over after the death of the husband, and it was held by Vice-Chancellor Malins (at *p. 147*) that the husband had the life estate, with a power to acquire the entire interest if he wanted it, but that if he did not acquire it, there was a gift over to the nephews and nieces, and as he died without doing anything to acquire the absolute interest, the gift over must take effect. See, also, *In re Thompson's Estate, 13 Ch. Div. 144; S. C. on error, 14 Ch. Div. 263*.

It must also be observed that the whole basis of the argument in the case for an absolute estate, as arising from the gifts of the proceeds to the life tenant, depends upon the assumption that

the power over the property and to reach the proceeds which testator has given to his wife is absolute. But this assumption is not well founded, for, by the testator's gift over of what "may then remain" after the death of his wife, he indicates clearly that his will, and not that of his wife, is to direct the disposition of the property which she has not during her life disposed of under the power, and that her power is not to extend to a disposition by will. *In re Thompson's Estate, supra.*

The express extension of the power over the $10,500 made by the codicil to a disposition by will or otherwise, indicates also the opinion of the testator at that time that power to dispose of the estate by will had not been given by the original will, and, if the will and codicil are now to be read as parts of one paper or will, speaking from the date of the codicil, then the intention gathered from this one will must be that the power did not extend to a disposition by will, except as to the $10,500.

Upon this branch of the case I conclude, therefore, that Mrs. Shotwell had not an absolute title to the personal property, but only a life estate with a power of sale and disposal which she had the right to exercise for her own benefit.

The second question is as to the extent to which the power of sale and disposal has been so exercised by the wife as to vest in her the absolute estate in any of the property under the will. This is one of greater difficulty. Sales of personal property, being stocks in corporations belonging to the testator's estate, were made by the defendant executor and while he was sole acting executor, his answer admitting that Rahway Gas Light Company stock was sold for $9,884, with the knowledge and consent of the widow and in order to obtain an income for her support. Sales of other stocks and personal estate for about $2,500 were also made by the executor, but as to this there is no admission in the answer that they were sold by the widow's consent, and on the hearing the only proof offered was that these were sold without consultation with her and without her knowledge or consent, and that the only sale to which she consented was that of the Rahway gas stock. The only other personal estate, in relation to which the question now presented arises,

was a bond and mortgage for $6,000. inventoried by the defendant executor, and which were afterwards surrendered to the mortgagor upon the executor receiving from the mortgagor a deed for the mortgaged property, made to him as one of the executors of Jacob R. Shotwell's estate. It is admitted, in the answer of the defendant executor and the other residuary legatees, that this was done with the knowledge and consent of the widow.

The representatives of the widow claim that these sales and conversions, which were made by the executor with her consent, are to be treated as exercises of her power of disposal for her own use, and that she is, therefore, entitled to the proceeds for her own benefit. On the other hand, it is claimed that these were not sales by the widow under the power, but were sales on the authority of the executor alone, and that the widow has exercised no power of sale or disposal and can therefore be entitled to none of the proceeds as appointed under the power.

Strictly and technically speaking, the wife did not sell or dispose of any of this personal property, and the legal act of conversion was the act of the executor. This technical and legal conversion is one which could only be made by the executors. The executors appointed by the will take the title to personal property direct from the will, as soon as they have proved the will and received letters testamentary, and under this power may and must sell sufficient personal property to pay the debts. Beyond this they had no right, as between them and the widow, to sell without her consent, because the full power to dispose of all testator's estate expressly given to her, in order to have effect as a power, must be considered as subject only to the power given to the executors by law to get in the estate and pay the debts. The debts in this case, as appears by the proofs, amounted to an inconsiderable sum, not sufficient to exhaust the personal estate which was sold without the widow's consent. The consent of the widow to the sale of the Rahway Gas Company stock may, therefore, under the circumstances, perhaps be taken as substantially and in equity a sale and disposal of the stock by the widow, and her consent may be taken as a sufficient indica-

tion of her intention to allow the trustee or executor who held for the purposes of her appointment to convert the stock into funds over which she could exercise the further power·of appointing to her own use. But the mere consent to the sale by the executor, who, so far as appears, was still to retain and did actually retain the legal title to the proceeds as executor, does not seem to me to be a sufficient indication of an intention on the part of the wife to appoint the property or the proceeds to her own use. On the contrary, the fact that the widow allowed the executor to make the legal sale, and to hold the legal title to the proceeds of sale without further directions from her, would seem to indicate that the mere consent to the sale was not intended as an execution of the power to appoint the proceeds to herself, and that these proceeds were to remain in the hands of the executor subject to her future appointment to her own benefit during her life, if she so desired. The real question in such cases is whether there was an intention to execute the power.

Where application is made to a court of equity to aid the execution of a power which has not been technically and legally executed, the right to relief depends upon establishing, satisfactorily, the intention on the part of the donee to execute the power. *1 Lead. Cas. Eq. (4th Am. ed.) 238*, and cases cited. In *Garth* v. *Townsend, L. R. 7 Eq. Cas. 220*, Sir W. M. James declined to aid a defective instrument because, in his opinion, the instrument itself showed that the testator purposely abstained from exercising the power, and he said that, although the court, in order to carry out the intention, may supply defects occasioned by mistakes or inadvertence, it cannot supply omissions intentionally made. I fail to find in this case sufficient evidence of any intention on the part of the widow to exercise her power of appointing the principal fund derived from proceeds of the sales of the stock to her own benefit, and hold, therefore, that this power over the principal· fund was not exercised. As to the bond and mortgage transaction, this seems to have been the collecting or getting in of the assets of the estate by the executor in the course of his regular duties, rather than a sale or disposal of the property under the power, and the reasons above

given must, *a fortiori*, apply to the property conveyed to the executor in satisfaction of the debt due to testator, and which he holds, therefore, as personal estate undisposed of.

There has been no sufficient appointment or appropriation of these proceeds to her own use, and this, also, will be held by the executor for the benefit of the residuary legatees.

My conclusion upon the whole case, therefore, is that the limitations over of his personal estate after the death of his wife, made by the testator, are valid, and that the personal estate in the executor's hands after paying debts, the expenses of settling the estate and the balance due, if anything, on the legacy of $10,500, is to be paid to the persons to whom the same was limited over by the testator's will after his wife's death. The case is not free from difficulty upon either of the questions involved, and I reach my conclusion not without some doubt. But as the result now reached seems to carry literally into effect all of the express directions of the testator as to all of the objects of his bounty, I incline to this view rather than to the one which requires rights to be conferred by implication on the life tenant, which will have the effect of rendering ineffectual the gifts to those in remainder. As to the real estate of which the testator died seized, I make no adjudication. I cannot now see any authority or jurisdiction on this bill to adjudicate upon the title to real estate, nor are the issues so framed, either as to opposing parties or allegations, as to authorize an adjudication on the title to the real estate.

The complainant files his bill in a double capacity, first as an executor of Jacob R. Shotwell, seeking the direction of the court in reference to the execution of his trust, and secondly as a legatee seeking the recovery of legacies. Individually and as executor of Eliza J. Stroud, he represents the legatees of Jacob R. Shotwell, to whom the estate was limited over, and as executor of Martha S. Shotwell, he represents her personal estate. As executor of Jacob R. Shotwell, his trust does not extend beyond the personal estate, and as legatee, the relief to which he is entitled is confined to the personal estate. The title to the real estate, which is a purely legal one, must be settled regularly by other proceedings.