The questions coming up for determination arise from the submission of the following stipulation of facts:
"1. Harry Dailey died on or about February 13th, 1937, leaving a last will and testament which was on March 5th, 1937, duly admitted to probate by the surrogate of the county of Hudson and letters testamentary thereon were issued to The New Jersey Title Guarantee and Trust Company, and *Page 206 
defendant Charlotte R. Dailey, the executors therein named, and also the trustees thereunder, which have taken upon themselves the burden of administering the said estate, and said letters are unrevoked and in full force and effect.
"2. The following is a true copy of the last will and testament of said Harry Dailey, deceased:
"`IN THE NAME OF GOD, AMEN.
I, Harry Dailey, of Jersey City, in the County of Hudson and State of New Jersey, do hereby make, publish and declare the following as and for my last will and testament, hereby revoking and annulling all former wills by me made.
First: I give to my nephew William B. Nevius twenty shares of stock of Joseph Dixon Crucible Company.
Second: I give to my nephew John Day Hegeman twenty shares of stock of Joseph Dixon Crucible Company.
Third: I give to my nephew William Rogers Hegeman twenty shares of stock of Joseph Dixon Crucible Company.
Fourth: I give to my aunt Mary A. Bay, ten shares of stock of Joseph Dixon Crucible Company.
Fifth: I give to William D. Small, now my chauffeur, five shares of stock of Joseph Dixon Crucible Company.
Sixth: I give and bequeath to Emory Methodist Episcopal Church, Jersey City, aforesaid, two thousand dollars to be added to its Perpetual Endowment Fund, the income of which is to be used as directed by the Board of Trustees of said Church. In case said Church corporation shall be dissolved or cease to function, I direct that said two thousand dollars shall be paid to the Retired Ministers Endowment Fund of the Newark Conference of the Methodist Episcopal Church.
Seventh: I give, devise and bequeath all the rest, residue and remainder of my estate, both real and personal, and wheresoever the same may be situate, unto my wife Charlotte R. Dailey and The New Jersey Title Guarantee Trust Company, in trust, nevertheless, to hold, invest and reinvest the same, and to pay over the income arising therefrom, and so much of the principal thereof as she may desire, unto my wife during the term of her natural life.
Eighth: On the decease of my wife, I give, devise and bequeath any and all residue which shall remain in the hands of my surviving trustee unto my sister, Jannie R. Nevius. Should my said sister not survive my wife, then in that event, I give, devise and bequeath said residue if any, unto my said nephew William B. Nevius, as and for his own property and estate.
Ninth: If at the time of my decease I have not made provision for the permanent maintenance of the lots in the cemeteries where my father, my mother and my grandmother Lydia A. Hoff are buried, I direct my executors to make such provision therefor from my estate as to them may seem proper. *Page 207 
 Tenth: I hereby vest my executors and trustees with full power and authority to make sale of, or mortgage, any and all real property of which I may die seized, for such amount and on such terms as to them may seem for the best interest of my estate.
Eleventh: I direct my executors to pay all transfer inheritance taxes assessed against the above stated legacies out of my residuary estate.
Twelfth: I hereby constitute and appoint my wife Charlotte R. Dailey and The New Jersey Title Guarantee Trust Company as executors of this my will, and as trustees hereunder.
In Witness Whereof I have hereunto set my hand and seal this sixth day of January, in the year one thousand nine hundred and thirty-three.
HARRY DAILEY (Seal)
Signed, sealed, published and declared by the said testator as and for his last will and testament in our presence, and we at his request and in his presence, and in the presence of each other, have hereunto set our hands as witnesses thereto.
Elsie B. Maccracken, 15 Exchange Place, Jersey City, N.J.
Charles L. Carrick, 103 Gifford Ave., Jersey City, N.J.'
"3. Charlotte R. Dailey, Jannie R. Nevius and William B. Nevius are all now living and of full age, and said Charlotte R. Dailey is now seventy-three years of age. The said Jannie R. Nevius is a sister of the testator, and William B. Nevius is the son of the said Jannie R. Nevius.
"4. The heirs-at-law and next of kin of Harry Dailey, at the time of his death, were and still are the following persons: Charlotte R. Dailey, his widow; Jannie R. Nevius, his sister.
"5. On or about July 14th, 1937, said Charlotte R. Dailey notified, in writing, The New Jersey Title Guarantee and Trust Company of her desire for a payment from the principal of the estate of Harry Dailey, as follows:
 "`2600 Hudson Boulevard, Jersey City, N.J. July 14, 1937.
To Charlotte R. Dailey and The New Jersey Title Guarantee Trust Company, executors of the last will and testament of Harry Dailey, deceased:
In accordance with the provisions of the Seventh clause of the will of my late husband, Harry Dailey, I desire to have, and will you kindly therefore pay to me, from the principal of his estate, the sum of ten thousand dollars,
 Very truly yours, CHARLOTTE R. DAILEY.' *Page 208 
"6. The estate of said Harry Dailey consists of real property of an approximate valuation of $5,000 and after deducting the expenses of administration, debts and other legacies, of personal property of an approximate value of $120,000 passing under the residuary clause of his will. The income therefrom amounts to about $4,000 per annum."
The defendants Jannie R. and William B. Nevius say: that a consideration of the entire will, and the circumstances, and age, of the widow suggest the inference that the testator had in mind, when he executed his will, a reasonable competence for his wife during the period of her life, and that this purpose will be defeated if the trustees are given permission, without restriction, to pay or give the principal of the residue of the estate to her on her request; that it was the plain intention of the testator to vest in his executors and trustees discretionary power to make payments out of the principal to the decedent's wife, and in the exercise of such discretion in making payments, the disbursements were to have some relation to the personal requirements of the wife. They also assert that the trustees are under no obligation, and have no right, to make payments out of the principal of the trust estate to the decedent's wife, without regard to her requirements and that, therefore, they should not make the payment of $10,000 as requested by the widow of the testator, unless they are satisfied that the application of it is to be toward her maintenance, support, and use. They say that the will does not make an absolute gift of the principal; and, in support thereof, they cite Kleaver v. Jacobs, 104 N.J. Eq. 406; affirmed, 107 N.J. Eq. 139; Duncan v. Murphy, 92 N.J. Eq. 682; Gaston v. Ford, 99 N.J. Eq. 592; Weaver v. Patterson,92 N.J. Eq. 170.
The defendant Charlotte R. Dailey claims that the Seventh and Eighth clauses of the will authorize and direct the executors or trustees to pay, or turn over, any part of the principal of the trust fund to her upon her request; and that the trustees have no discretionary power thereto, and must pay to her, out of the principal, such sum or sums as she shall expressly "desire." *Page 209 
The Seventh clause of the will gives the remainder of the decedent's entire estate to his wife and the complainant, as trustees, in these words: "to hold, invest and reinvest the same, and to pay over the income arising therefrom, and so much of the principal thereof as she may desire, to my wife during the term of her natural life." (Italics mine.) That language gives the trustees no discretion in a consideration of the decedent's wife's application for "so much of the principal * * * as she may desire." The words quoted are clear and free from ambiguity. They "tie no strings" upon the wife's right to demand moneys from the executors and trustees. The payments to her are not limited to a particular, or specified, purpose, as was the situation in the case of Coffin v. Watson, 78 N.J. Eq. 307.
A reading of the Eighth clause of the will strengthens and confirms the belief that the testator felt that his widow might exercise her right to use the principal of the corpus of his estate to the extent that there would be no remainder to dispose of. It states that on the decease of his wife, the residue remaining in the hands of the surviving trustee, should go to the decedent's sister, Jannie R. Nevius. In the event she, Jannie R. Nevius, did not survive his wife, then, the decedent directed the residue, "if any" should go to his nephew, William B. Nevius. The use of the words "if any" suggests the implication that the decedent realized that his widow might determine to make use of her right to invade the principal of his estate, in consequence of which the principal would be reduced or depleted; and, therefore, with that thought in mind, he said that the residue "if any" should go to his nephew, William B. Nevius. The testator's language gave no assurance that there would be any part of his estate remaining, upon the death of his wife, which would go to his sister, or his nephew. I am satisfied such a prospect dominated the mind of the testator, by virtue of which he gave expression to the language contained in the Seventh and Eighth clauses.
My opinion, as hereinabove expressed, I feel, is, to some extent, supported by the fact that the testator and his wife had no children, or other dependents. He named his widow *Page 210 
as co-executor and co-trustee as an evidence of his trust and confidence. She, unquestionably, was, first of all, the object of his affectionate regard, solicitude and beneficence. An appreciation of what she might want — "desire" — dictated his will, and now rules his testament. In Robeson v. Shotwell,55 N.J. Eq. 318, the testator gave his wife his estate "for her sole use, benefit and enjoyment during her life, with full power to sell and dispose of any of said property * * * and to use the proceeds thereof in such manner as she may desire." The court, in that case, held that the wife took a life estate only in the personal property with a power of disposal and appointment by act taking effect during her life, for her own benefit, notwithstanding the provisions of the will which provided for the disposal of "such property as may then remain" after her death. The use of the words "what remains at my daughter's death," under the opinion of Vice-Chancellor Berry, in Briggs v. Faulkner,120 N.J. Eq. 1, imply uncontrolled power of disposition in the first taker. This last cited case somewhat supports the contention of the defendant Charlotte R. Dailey. Huston v.Huston, 111 N.J. Eq. 257.
The court's main concern is not so much what the testator meant to say as it is to determine what he meant by what he did say.German Pioneer Verein v. Meyer, 70 N.J. Eq. 192. It cannot speculate as to the testator's intention; it must ascertain that intention from the four corners of the will. Its problem arises from that instrument when the language therein expressed purports to convey the testator's intention. "The purpose of construction as applied to wills is unquestionably to arrive, if possible, at the intentions of the testator, but the intention sought for is not that which existed in the mind of the testator, but that which is expressed in the language of the will." Bingel v.Volz, 142 Ill. 214; 31 N.E. Rep. 13; Maxwell v. Maxwell,122 N.J. Eq. 247.
An examination of the will, and a consideration of all the facts and circumstances, lead me to the inevitable conclusion that the testator did not intend by the use of the word "desire" in the Seventh clause of his will, to vest in his executors and *Page 211 
trustees, the right to determine if this sum, or that sum, or a greater, or a lesser sum, should constitute his wife's desire. That right of determination was given by the testator to his wife, and to nobody else. Their judgment is not to be substituted for her's. Whether her desire expressed to the executors and trustees is reasonable or unreasonable, is not for them to decide. They are not empowered to follow and control the course of money payments once the decedent's wife's "hands close over them." The decedent's testament imposes no right in them to question the application of payments made, or to be made, to her.
The trustees are instructed, and advised, to comply with the desire, or demand, of Charlotte R. Dailey, individually, and pay her the sum of $10,000. They are further advised and instructed that she, individually, has the right, under the will, to demand any part of the principal of the trust fund, at such time, or times, as she may desire.