A petition for a decree of distribution was filed by James J. Reardon and the Commercial Trust Company of New Jersey, surviving executors and trustees under the last will and testament and codicil thereto of Minnie G. Bumsted, who died on or about October 6th, 1930. The will and codicil were admitted to probate in this court on October 22d 1930. One of the executors and trustees, Pierre F. Cook, who qualified as such, died June 16th, 1943.
The decedent testatrix, Minnie G. Bumsted, left an estate of an approximate value of one and a half million dollars. Under paragraphs Second to Fifth, inclusive, and Seventh and Ninth of her will, and paragraph Second of her codicil, she bequeathed money legacies totaling $476,000 to 22 people and institutions. She also provided for the establishment of four trusts, the total principal of which amounted to $435,000, as follows:
Under paragraph Sixth thereof a trust in the sum of $10,000 for the benefit of Clara H. Stoddard with income to her for life.
Under paragraph Eighth thereof a trust in the sum of $200,000 for the benefit of Minnie A. Dimse with income to her for life.
Under paragraph Tenth thereof a trust in the sum of $25,000 for the benefit of James A. Noble with income for the education and support of James A. Noble during his life.
Under paragraph Eleventh thereof a trust in the sum of $200,000 for the benefit of James J. Reardon with income to him for life.
It is provided in the paragraphs creating the trusts that upon the death of the life tenants named therein, the principal thereof shall pass into and form a part of testatrix' residuary estate. The residue of the estate is given, devised and bequeathed to Phillips Academy at Andover, Massachusetts, in the following language: *Page 253 
 "Fifteenth. All the rest, residue and remainder of my estate, both real and personal, of every nature and kind, and wheresoever situate, of which I shall die seized and possessed, or in any manner entitled to, including the trust funds hereinbefore set apart for the benefit of my sisters-in-law, Clara H. Stoddard and Minnie A. Dimse, and said James A. Noble and James J. Reardon, from and after their respective deaths, after the payment of said inheritance taxes, I give, devise and bequeath to the corporation, by whatever name or corporate title the same may be known, conducting the educational institution known as Phillips Academy at Andover, Massachusetts, for the general purposes of such institution, to have and to hold the same unto the said corporation, its successors and assigns forever."
Clara H. Stoddard and Minnie A. Dimse, the life tenants of two of the trusts aforesaid, are dead, and the trusts established for them have "fallen in," and are now distributable.
It appears that during a nationwide depression, in the early 1930's, there was a substantial depreciation in the values of the assets of the estate, which created a doubt in the minds of the estate's administrators that a liquidation of the estate would produce moneys sufficient to pay in full the money legacies and trust funds under the will and codicil. Thereupon, the executors contacted the beneficiaries and informed them of the estate's condition and discussed with them the advisability of entering into an agreement for the postponement of the payment of their legacies and trust funds and for a postponement of the liquidation of the estate in the hope that there might subsequently be an appreciation in the value of the assets of the estate, the benefit of which would enure to the beneficiaries. The beneficiaries presumably were persuaded by the representations of the executors and trustees, and consented to a postponement of the payment of their legacies and trust funds and of the liquidation of the estate. An agreement to that effect was executed by the beneficiaries and the executors on April 6th, 1932. It is entitled "Agreement postponing payment of legacies and trust funds," and provides among other things for the postponement to April 6th, 1934, of the payment of the money legacies and the trust funds. Paragraph tenth thereof reads as follows:
"10. If and when the real and personal estate of Minnie G. Bumsted, deceased, is liquidated sufficient funds (including income in hand) are not available after payment of all proper charges to pay in full *Page 254 
the principal of the various legacies and trust funds, the same shall be paid proportionately without reference to the interest paid under this agreement; provided, however, that the executors may from time to time as and when funds become available make proportionate payments on account of the various legacies and trust funds."
On April 6th, 1934, the estate's assets were still insufficient to meet the amounts due under the legacies and the trusts. The parties then entered into another agreement dated April 6th, 1934, entitled "Agreement relative to distribution of estate." Paragraph second thereof provides that the assets of the estate, except certain stocks referred to therein, should be sold. Paragraph third thereof provides among other things, as follows:
"3. The net proceeds of sale of said personal property assets so to be sold under paragraph 2 hereof and any moneys now in or otherwise coming into the executors' hands shall be paid and applied by the executors to the following items:
 * * * * * * *
"(f) To the payment to the legatee, The Woodlawn Cemetery, of the full principal amount of its legacy of Five Thousand Dollars ($5,000.), * * *
"(g) The remaining net proceeds of sale of said personal property assets shall, by the executors, be paid to the various legatees, under said will and codicil, including the trustees of the trust fund legacies and (excluding the residuary legatee and devisee and excluding the legatee The Woodlawn Cemetery) proportionately, in the ratios that the principal amounts of said respective legacies, including trust fund legacies, bear to the total of all said legacies, including trust fund legacies, upon execution and delivery to the executors of duly executed proper refunding bonds and releases; subject, however, to any legatee's share being charged with such amount as may be necessary under paragraph 4 (d) hereof in cases where such legatee may take over from any other legatee any fractional share or shares of the stocks to be distributed in kind under paragraph 4 of this agreement."
Paragraph fourth of the agreement provides as to the division and distribution of the shares of stock referred to, as follows:
"4. The remaining personal property assets, namely, 250 shares of the stock of Colonial Life Insurance Company, 1,368 shares of the stock of Joseph Dixon Crucible Company and 2,860 shares of the stock of New Jersey Title Guarantee Trust Company shall by the executors be divided and distributed in kind, in so far as practicable *Page 255 
(each of said three groups of stock to be treated as a unit for the purposes of such division and distribution), among and to the legatees under said will and codicil, including the trustees of the trust fund legacies (excluding the residuary legatee and excluding also the legatee The Woodlawn Cemetery); and, subject to all the terms and conditions of this paragraph 4, such division and distribution in kind shall be pro rata in the ratios that the principal amounts of said respective legacies bear to the total amount of all said legacies. * * *"
The Woodlawn Cemetery legacy was paid in full, but the money legacies and trust funds were not. They were paid proportionately. The amount received by each legatee and by each trust fund was approximately 36% of the legacies and trust funds provided under the will and codicil. The residuary legatee received nothing.
On September 11th, 1944, this court allowed and passed the final account of the executors and the fourth intermediate account of the trustees. Those accounts had been dated November 22d 1943, and were filed because of the death on August 5th, 1943, of Clara H. Stoddard, the life tenant of the Stoddard trust, and the death on November 21st, 1943, of Minnie A. Dimse, the life tenant of the Dimse trust, upon which dates those respective trusts terminated. By the decree of September 11th, 1944, it was ordered, adjudged and decreed among other things that there were balances of $3,267.63 corpus and $10.69 income in the Stoddard trust and $65,632.64 corpus and $.03 income in the Dimse trust. The trustees now have in their hands available for distribution the sum of $2,259.46 corpus and $134.06 income in the Stoddard trust, and the sum of $62,392.62 corpus and $6,469.87 income in the Dimse trust. For these balances a decree of distribution is now sought.
The petitioners are of the opinion that the balances are distributable to and should be paid to the residuary legatee. Paragraphs Sixth, Eighth, Tenth and Eleventh of the will direct that immediately upon the death of the particular life tenant the principal of that trust fund "shall pass into and form a part of my residuary estate." Paragraph Fifteenth of the will, which is the residuary clause, gives, devises and bequeaths the residue of the estate "including the trust funds hereinbefore set apart for the benefit of my sisters-in-law *Page 256 
Clara H. Stoddard and Minnie A. Dimse, and said James A. Noble and James J. Reardon from and after their respective deaths," to Phillips Academy at Andover, Massachusetts.
The petitioners contend that the agreements aforesaid contain nothing which would alter or diminish the right created under the will, of the residuary legatee to receive those trust fund balances, or the duty and obligation placed thereunder upon the fiduciaries to pay the same to that residuary legatee. They assume the attitude that the purpose of the parties in entering into the agreement was to provide a definite basis for paying the legacies and establishing the trust funds by agreeing first, upon the method to be used in allocating to each legacy and trust fund the portion of the estate assets to which each was entitled, and second, upon the type of assets to comprise that portion. They argue that the 1934 agreement shows in paragraph 3 (g) and 4 thereof the method agreed upon was that the legacies and trust funds would be paid proportionately and the type of assets comprising the assets to be delivered in payment of the legacies and trust funds was cash and securities; that in paragraph 6 of the same agreement it is provided that upon the sale of decedent's real estate, the proceeds arising therefrom would be distributable among the legatees and the trust funds.
They further assert that the residuary legatee was excluded from the agreement because the proportionate division and distribution provided for could not and did not apply to the residuary legatee, and that the exclusion of the residuary legatee is confined solely to the proportionate division and distribution; and that in no other respect is the residuary legatee excluded. They maintain that the legatees and trustees believing that the assets of the estate were of insufficient value to permit payment of the legacies and trust funds in full, agreed to take in lieu of the full amounts of their respective legacies and trust funds proportionate shares of the assets available; and their agreement to do so was a final determination of their rights when they received their agreed proportionate shares.
The legatees, however, do not share the views of the petitioners. They maintain that since they have not been paid *Page 257 
in full, they are now entitled to share in the two trust funds which have "fallen in." There seems to be no authorities in this state or elsewhere dealing precisely with the situation with which we are here confronted.
Counsel have submitted the following authorities: FirstNational Bank and Trust Co. v. Baker, 124 Conn. 577;1 Atl. Rep. 2d 283; Sanborn v. Sanborn, 14 N.J. Mis. R. 260;184 Atl. Rep. 400; Summit Trust Co. v. McAuley Water StreetMission, 125 N.J. Eq. 505; 6 Atl. Rep. 2d 406; HudsonCounty National Bank v. Pressler, 136 N.J. Eq. 490;43 Atl. Rep. 2d 178.
In the Summit Trust Co. Case, supra, the decedent made a number of bequests, some being outright and some being in trust, all of which the court designated as the first group. The bequests were to be paid in full. The decedent then made other bequests, which he directed to be paid in full or equally prorated, as the case may be. He gave the residue of his estate to three institutions. There was sufficient to pay the bequests in the first group in full, but not enough to pay the second group in full. The life beneficiaries of the two trusts which were to be set up in the first group predeceased the testator and the trusts thereupon lapsed. The conflict arose when the legatees of the second group and the residuary legatees claimed thecorpus of the two lapsed trusts. Involved also was the future disposition of the principal of the trusts set up under the will. The court held that normally the principal of the trusts would be first applied to the payment of the second group of bequests to the exclusion of the residuary legatees under the established rule that no residuary estate can come into existence until all of the general legacies are paid in full. It then considered whether the use by the testator of the language "the following bequests be paid in full or equally prorated, as the case may me," indicated a contrary intention. In holding that it did not, and that the funds were payable to the legatees of the second group to the exclusion of the residuary legatees, the court said:
"There is nothing in the will as a whole to indicate that testator intended that the residuary legatees should receive the principal of the trusts to the exclusion of the legatees *Page 258 
named in the second group. The court's main concern is not so much what the testator meant to say as it is to determine what he meant by what he did say. New Jersey Title Guarantee, c., Co.
v. Dailey, 123 N.J. Eq. 205; 196 Atl. Rep. 703. The testator meant by the expression `paid in full or equally prorated, as the case may be' in the light of the other provisions of the will, that if, after payment of the outright bequests and setting up the several trusts, the balance of his estate be insufficient to pay in full the second group of bequests, then such balance was to be prorated among them, and nothing more. That testator intended the second group of bequests to be paid in full before the residuary legatees take anything under the will, is borne out by the provisions of the thirty-ninth paragraph wherein he provides, `that all of the foregoing bequests' be paid free from all taxes, fees, commissions and expenses of administration `which shall be a charge on the residuary estate.'"
Counsel for Phillips Academy claims that the phrase "including the trust funds hereinbefore set apart" in the Fifteenth paragraph of the Bumsted will, removes the corpus of the funds from the residuary clause and converts it into a specific legacy. To sustain its contention, they cite Johnson v. Poulson,32 N.J. Eq. 390. The testator in this last cited case disposed of his property by giving three legacies of $2,000 each to his daughters and to his wife the use of so much of his homestead and farm as she desired. The residue of his property, which included his farm, he gave to his sons subject to certain payments. The daughters contended that their legacies were chargeable on the residue including the farm, and the court decided that the legacies were not chargeable on the farm because: (1) by permitting his wife to use the farm the testator excluded the idea that it could be sold to satisfy the legacies; (2) by expressly charging the farm with certain payments the testator intended to and impliedly did exclude the legacies as a charge against the farm; (3) the proofs did not establish the insufficiency of the personal estate to discharge the legacies; and (4) in view of the testator's intent, as expressed in the residuary clause and other parts of his will, the farm was not part of the residuary estate. *Page 259 
That case is distinguishable from the instant one in that the wills are different. The farm was mentioned for the first time in the residuary clause, and it was evident from the will that the testator intended to treat the farm separately from the rest of his property. In the instant case there are directions that the trust funds shall become part of the residuary estate. Our courts take the position that the enumeration and inclusion of specific property in a residuary clause do not remove that property from the residuary estate. See Sanborn v. Sanborn, supra; HudsonCounty National Bank v. Pressler, supra.
It is well established law that in construing a will the court's function is to determine the intent of the testator from the four corners of the will. Ash v. Ash, 126 N.J. Eq. 531;10 Atl. Rep. 2d 150.
In the case at bar there are four specific directions in four separate instances following the establishment of each trust fund wherein the testatrix provided that upon the death of each life tenant the principal of each trust fund "shall pass into and form a part of my residuary estate." That language clearly indicates her intention that the principal of the trust funds should become part of her residuary estate. Any other construction, in my opinion, would do violence to her definitely expressed intention. "The law is well settled that `where an estate or interest is given in one clause of a will, in clear and decisive terms, the interest so given cannot be taken away or cut down by raising a doubt upon the extent and meaning of a subsequent clause, or by inference therefrom; but to justify a rejection of the first clause the language of the subsequent clause must be as clear and decisive as that of the first clause.'" Commercial Trust Companyof New Jersey v. Kohl, 131 N.J. Eq. 233; 24 Atl. Rep. 2d809.
In Bristol v. Stump (Court of Appeals of Maryland),110 Atl. Rep. 470, the testator left a will wherein he said:
"I give devise and bequeath all the rest and residue of my estate, real, personal and mixed, including my farm called `Waverly,' to my nephew, Bertram N. Stump, and his heirs forever, and I constitute and appoint my said nephew to be my executor without bond." *Page 260 
The estate was insufficient to pay a general legacy. The question involved was whether such legacy should be charged against the farm. The court said:
"The rule is that the enumeration of property in a residuary clause of a will in general terms does not constitute the legacy or devise a specific one. There must be something in connection with the enumeration of property to show that the testator's intention was to make the devise or legacy a specific one before the courts will so declare it.
 * * * * * * *
"In the case before us the farm `Waverly' is not segegrated from the rest and residue of the testator's estate and specifically devised as such, but, on the contrary, it is expressly stated that it forms a part of that portion of his estate which is described and devised as the rest and residue of his estate, real, personal, and mixed.
"There is nothing in the language used to indicate that there were to be two distinct gifts, one a specific devise of a farm, and the other of the residue, as in the Estate of Painter,supra. There was but a single devise — a devise of the rest and residue of the testator's estate — which expressly included the farm `Waverly,' and there is nothing, so far as we are able to discover, in any part of the will from which we may infer that it was the intention of the testator, in mentioning the farm `Waverly' in the residuary clause of his will, to specifically devise it. His object no doubt in mentioning it was to describe with more particularity the property included within the term `rest and residue' of his estate."
In Camden Trust Co. v. Cramer, 136 N.J. Eq. 261;40 Atl. Rep. 2d 601, our Court of Errors and Appeals, among other things, said:
"Specific legacies are subject to ademption; and it is the settled rule of construction that a legacy will not be deemed specific unless the testator has explicitly indicated such to have been his intention. Blair v. Scribner, 67 N.J. Eq. 583;Mecum v. Stoughton, 81 N.J. Eq. 319; Patanska v. Kuznia,102 N.J. Eq. 408; affirmed, 104 N.J. Eq. 203."
The general legatees, I feel, are entitled to have their claims satisfied from the trust funds aforesaid. It was the intention *Page 261 
of the testatrix that they each should receive a certain sum; and I do not believe, when funds are available, as here, that intention can be frustrated by agreements between the executors-trustees and the legatees as appears to be the situation here. All of the parties to the agreements consented to a postponement of all general legacies until April 6th, 1934. It was then represented to them that the payment of their legacies in full was uncertain, and doubtful, whereupon, in the circumstances, the beneficiaries released the executors from all obligations to pay any sum to them or to account until a reasonable time thereafter. By paragraph 6 of the agreement of April 6th, 1934, it is recognized that some of the real estate must be sold before lost. The parties agreed that the net proceeds arising from such sale should be distributed among the legatees, excluding the residuary legatee. It is apparent that it was the intention of the parties that nothing should be paid to the residuary legatee until the general legacies are paid in full, since this paragraph further provides that such real estate proceeds should be paid to the general legatees exclusive of the residuary legatee "until the principal amounts of said legacies are paid in full with interest at 6% per annum from April 6th, 1934, to the time of such full payment and any excess shall be paid to the residuary legatee and devisee."
The agreement in no way indicates that the general legatees agreed to transfer the corpus of the trust funds to the residuary legatee.
In the circumstances the residuary legatee is not entitled to the corpus of the trust funds by virtue of the agreement of April 6th, 1934. I am satisfied the general legatees are entitled to payment in full before any payment can be made to the residuary legatee; consequently, the corpus and interest of the trust funds which have "fallen in" are to be distributed prorata among the general legatees, excepting The Woodlawn Cemetery, which has received its legacy in full as hereinabove stated. *Page 262